New-London,
July, 1839.

Wooster
v.
Butler.

| 13 | 309 |
| 71 | 572 |
| 13 | 309 |
| 72 | 232 |
| 13 | 309 |
| 74 | 380 |
| 13 | 309 |
| 76 | 615 |

## WOOSTER and another *against* BUTLER.

Where the defendant in action of ejectment, claimed, that the demanded premises were a part of an ancient travelled highway, reserved in the original grant from the town in 1676, under which both parties claimed; and for the purpose of proving, that this highway was recognized, by the proprietors of the adjoining land and others residing in the vicinity, as being the highway so reserved, offered in evidence a copy of a paper recorded in the town-clerk's office, purporting to be the survey of a road laid out at the request of an ecclesiastical society in that town; which paper referred to the reservation in the original grant, and was left for record in 1741; it was held, that this paper was inadmissible, 1. because there was no evidence of authenticity or legality accompanying it; 2. because it was irrelevant; for the reservation of a highway, if legally shewn, only secures to the public the right of passage, and does not disprove the title of an adjoining proprietor to the soil subject to the easement, and consequently, is no defence to this action.

In this state, traditionary evidence is admissible, not only to prove facts of a public or general nature, but to shew the boundaries of lands between individual proprietors.

Therefore, where the question between the parties in an action of ejectment, was, whether a highway reserved in 1676, was laid out over certain meadow land, as the defendant claimed, or over the upland, as the plaintiff claimed; and the plaintiff, in support of his claim, offered, as witnesses, several aged men, who testified, that when young, they heard old men, since dead, say, that there was a travelled road or highway over the upland; it was held, that this evidence was admissible.

Where the declaration in an action of ejectment, described the demanded premises as being bounded *South* on a turnpike road; and it appeared, that they were bounded by the travelled part of such road; it was held, that the description in the declaration was sufficiently certain, to enable the plaintiff, after establishing his title, to recover the land embraced in the highway.

Though the construction of written documents is a matter of law, and is not, in ordinary cases, to be submitted to the jury; yet where there is a doubt produced by the existence of collateral facts, extrinsic of the instrument, its consideration ceases to be a matter of mere legal construction, and the intention of the parties is to be sought for, by a recurrence to the state of facts, as they existed when the instrument was made, and to which the parties are to be presumed to have had reference. These facts may be shewn, by parol evidence, and submitted to the jury.

Therefore, where a deed under which the plaintiff claimed, described the land in question as bounded from a certain point "*Northerly* by *C's* land to a stake and stones by a ledge of rocks; thence *Southerly*, by *E's* land, as the wall stands, to a stake and stones by the highway;" and it appeared, that there was some uncertainty as to the exact position of the wall, when the deed was executed; that the line of *E's* land was not identical with it; that it did not extend to the highway; that there was no such boundary by the highway as a stake and stones; and that the possession and occupation of the land under the deed had been in accordance with the claim of one party

and opposed to that of the other; the plaintiff claimed, that the line of *E's* land was coincident with the base of the ledge of rocks, and that this was the controuling boundary; the defendant claimed, that the wall was; and the court submitted to the jury, upon the evidence, the question which of these two objects was the true boundary; the jury having found for the plaintiff, it was held, 1. that such question was properly submitted; 2. that the verdict having taken the most prominent, as well as the most certain and permanent object, as the true boundary, and this being in accordance with the practical construction of the deed, it ought not to be set aside as against evidence.

THIS was an action of ejectment for a small piece of land in the town of *Lyme,* described in the declaration as being bounded "*Southerly* by the turnpike road."

The cause was tried at *New-London, January* adjourned term, 1839, before *Church,* J.

Both parties claimed title under a grant or survey from the town of *Lyme* to *Richard Ely,* dated *January* 26th, 1676, in these words: "Mr. *Richard Ely,* senior, his meadow on the *East* side of the *Great River,* belonging to *Six-mile Island* farm, is bounded *South* and *West* by the *Great River; East,* by the *Cove;* and *North,* by the upland." "Mr. *Ely* hath also laid out to him, which was a grant of the town, one hundred and six acres of upland, bounded, &c.—only a highway excepted to the *Great River.*" The plaintiffs claimed, that the demanded premises were a part of the meadow land mentioned in that survey; and that they derived title thereto, by deeds from that branch of the descendants of *Richard Ely,* who became the owners of the meadow land; and that the meadow land came up to the base of a ledge of rocks, which had always been a well defined and notorious boundary between the meadow and upland. The plaintiffs read in evidence a deed from another *Richard Ely,* supposed to be a grandson of the original grantee, to *Daniel Ely,* dated *July* 6th, 1744, bounding the premises "*North* by the road;" a deed from *Daniel Ely* to *Cullick Ely, Adriel Ely* and *Elisha Ely,* dated *September* 25th, 1766, bounding the premises "*North* by highway;" and partition deeds between *Cullick, Adriel* and *Elisha Ely,* dated the 20th of *February,* 1772. The deed from *Cullick* to *Adriel Ely* released three contiguous parcels of land, which, the plaintiffs claimed, included the demanded premises. They were thus described: 1st. "Beginning at a mear-stone 40 feet *Eastward* from the *South-East* corner of my dwelling-house; thence *Northerly* 10 rods, to

New-London,
July, 1839.

Wooster
v.
Butler.

a stake and stones by a ledge of rocks; thence *Easterly* and *Southerly* by lands now in the occupancy of *Samuel Ely,* until it comes to a stake by the rocks still *Southerly* to a mear-stone about 20 feet *North* from the *North-West* corner of my house; thence *Westerly,* 5 rods, 19 links, to the bounds begun at." 2nd. " Beginning at a mear-stone about 20 feet *North* from the *North-East* corner of the barn; thence *North* to the rocks; thence *Easterly,* by said rocks, about 11 rods, to a stake and stones by said rocks; thence *Westerly,* about 10 rods, to the bound begun at." 3rd. " The land that is covered by the sills and chimney of said *Adriel's* shop." The last piece, the plaintiffs claimed, was situated between the other two pieces.

The plaintiffs also read in evidence a deed from *Adriel Ely* to *Charles Ely,* dated *April* 2nd, 1805, which, they claimed, conveyed to the grantee the whole of the land above described in the deed from *Cullick* to *Adriel;* but this the defendant denied, and claimed that the demanded premises were not included in this description.

The plaintiffs also read in evidence a deed from *Charles Ely* to *Samuel C. Ely,* dated *May* 12th, 1836, and also a deed from *Samuel C. Ely* to themselves, dated *February* 25th, 1837; and thus they derived, as they claimed, their title to the demanded premises.

*Richard E. Selden* testified, that he surveyed the premises, at the request of the plaintiffs, and made a plan, which was exhibited on the trial, from the several deeds before-mentioned, and particularly the deed from *Cullick Ely* to *Adriel Ely.*

*Charles Ely* testified, that by virtue of his deed from *Adriel Ely,* he entered upon the demanded premises, claiming title to them, and occupied them for various purposes, for several years. .

The defendant claimed to have done the acts complained of, under one *Marsh Ely Anderson,* who claimed title under *Marsh Ely.*

The defendant read in evidence a deed from *Richard E.* to *Richard Ely* jun., the distribution of *Richard Ely's* estate, and the last will and testament of *Samuel Ely,* father of *Marsh Ely.* The defendant denied, that the demanded premises were a part of the meadow land, but claimed, that they

HARVARD LAW SCHOOL LIBRARY

were a part of the upland mentioned in the original grant; and much evidence was introduced on this point. The defendant also claimed, that the deed from *Adriel Ely* to *Charles Ely*, dated *May* 2nd, 1805, under which the plaintiffs claimed, did not include the land in question; so that the plaintiffs had never acquired title to the demanded premises, even if they were part of the meadow land. The description of the land in that deed is as follows: "Beginning at a mear-stone 40 feet *East* from the *South-East* corner of *Cullick Ely's* dwelling-house; thence *Northerly*, by said *Cullick's* land, to a stake and stones, by a ledge of rocks; thence *South-Easterly*, by *Marsh Ely's* land, *as the wall stands*, to a stake and stones by the highway; thence *West*, to the first station; containing one third of an acre, be it more or less."

The defendant introduced the testimony of *Asa Roath*, Esq. a surveyor, who testified, that he surveyed the land, as requested by the defendant; and that by his survey, the demanded premises were excluded. The place of beginning, course of the first line, and place at the base of the ledge of rocks, to which that line would arrive, were the same in the different surveys of *Selden* and *Roath*, and the question was as to the direction and termination of the other lines. *Roath* testified, that he ran along the course of what appeared to be an ancient wall, which extended a part of the way on the last course designated in his survey, towards the highway, but not to the highway; and he protracted the line in the same direction, to the highway, and thus departed from the line of *Marsh Ely's* land, if this was, as the plaintiffs claimed it to be, along the base of the rocks.

It was agreed, that the wall did not, in its whole extent, stand in *Marsh Ely's* line, if his line was to be determined, as the plaintiffs claimed, by the base of the rocks; but that, at a point about two rods from the *South* termination of the wall, the base of the rocks separates from the course of the wall, and runs *Easterly* and *South-Easterly* by the *Northerly* side of the demanded premises. *Roath* did not see the deed of *Cullick Ely* to *Adriel Ely*, when he surveyed the land. There were no stakes or stones by the highway, at any of the places claimed by either party; but the plaintiffs claimed, that the stake and stones mentioned in the deed from *Cullick*

to *Adriel Ely*, and those mentioned in the deed from *Adriel* to *Charles Ely*, were the same.

New-London, July, 1839.

Wooster v. Butler.

The plaintiffs claimed, that the line in the deed from *Adriel* to *Charles Ely*, described as running from the ledge of rocks " *South-Easterly*, by *Marsh Ely's* land, as the wall stands, to a stake and stones by the highway," was to be determined, by the line of *Marsh Ely's* land, *viz.* by the base of the ledge of rocks dividing the meadow from the upland ; and thus they would include the demanded premises.

The defendant claimed, that said line was to be determined, by the direction of the wall, as it stood when the deed was given ; and thus he excluded the land in question ; and claimed, that the jury, in determining the line, could not depart from the wall, as far as it went.

But the court instructed the jury, on this point, that if they found, that the base of the ledge of rocks was the line of *Marsh Ely's* land, they might depart from the wall, whenever the wall departed from the line of *Marsh Ely's* land. The defendant claimed, that this opinion of the court was erroneous, and that the verdict, in this respect, was against the evidence in the cause.

The defendant also claimed, that the demanded premises were a part of an ancient highway, running along at the base of the rocks, and leading down to *Ely's Ferry*, over or near the same ground now used as a turnpike road ; and was the same highway reserved in the original grant from the town of *Lyme*. It was admitted, that anciently, and until the turnpike road was made, there had been a public travelled path or road, where the defendant claimed ; and for the purpose of proving that such path or road was recognized, by the proprietors of the adjoining land and others in the neighbourhood, as the highway reserved in the original grant, the defendant offered in evidence a copy of a paper, recorded in the town-clerk's office in the town of *Lyme*, purporting to be the survey of a road laid out by *Nathaniel Matson* and *Daniel Ely*, at the request of the inhabitants of the *North* society of *Lyme ;* which paper referred to the reservation in the original grant, and was left for record, on the 6th of *October*, 1741. To the admission of this paper the plaintiffs objected ; and the court rejected it.

The plaintiffs claimed, that the highway reserved in the

original grant was over and upon the upland; and for the purpose of proving this, they offered the testimony of several old men, who testified, that when young, they had heard old men, whom they named, but who have been long ago dead, say, that there was a public highway or travelled path over and across the upland, as the plaintiffs claimed. To this testimony the defendant objected; but it was admitted by the court.

The defendant also claimed, and introduced evidence conducing to prove, that some part of the demanded premises were upon and included within the turnpike road, as surveyed and laid out. But it was admitted, that the whole premises were *North* of and adjoining to the travelled part of the turnpike; and the defendant requested the court to instruct the jury, that if they believed these facts, they ought not to return a verdict for the plaintiffs to recover the seisin of any land, which was not bounded *South* by the turnpike road, as surveyed and laid out. But the court did not so instruct the jury.

The court, among other things, informed the jury, that if the demanded premises were within the limits of the ancient highway, as reserved in the original grant from the town of *Lyme*, as claimed by the defendant; yet if they were a part of the meadow land, and if the highway in this place was entirely upon the meadow land, as the plaintiffs claimed; and if the plaintiffs had proved a title to the meadow land; they were entitled to recover, notwithstanding the reservation.

The jury returned a verdict for the whole of the demanded premises in favour of the plaintiffs; and the defendant, claiming that the decisions of the court were erroneous, and also that the verdict was against the evidence in the cause, moved for a new trial.

*Goddard* and *Brainard*, in support of the motion.

*Strong* and *McCurdy*, contra.

CHURCH, J.   In the progress of the trial of this cause in the court below, several questions collateral to the main point of controversy, were presented and determined, and which now furnish some of the grounds of exception here.

*New-London,*
*July, 1839.*

Wooster
*v.*
Butler.

1. The defendant claimed, that the demanded premises were a part of an ancient travelled highway running along the meadow land, at the base of the rocks, towards the ferry on *Connecticut* river, called *Ely's* ferry; and that this highway was the same intended to be reserved in the original grant from the town of *Lyme*, to *Richard Ely*, *January* 26, 1676. And for the purpose of proving that this highway was recognised, by the proprietors of the adjoining land and others residing in its vicinity, as being the reserved highway, the defendant offered in evidence a copy of a paper recorded in the town-clerk's office in the town of *Lyme*, purporting to be the survey of a road laid out by a committee, and referring to the reservation in the original grant; and probably made about the 6th of *October*, 1741, as on that day it was left for record. This survey was made by *Nathaniel Matson* and *Daniel Ely*, at the request of the inhabitants of the *North Society* of *Lyme*. This paper was properly rejected. It furnished no evidence of any fact material to the enquiry before the court. It was accompanied by no record of any town, proprietary or court appointing a committee to lay out a road. It purports to have been laid out at the request of the *North Society* of *Lyme;* but societies never had power to lay out roads. Indeed, the paper was offered without any evidence of authenticity or legality. But if it had been admissible as a well authenticated document, it was irrelevant. If it was true, as the defendant claimed, that this highway had been legally laid out and established, and upon the very ground intended in the original grant to have been reserved, it would have furnished no aid to this defence. The reservation of a highway only secures to the public the right of passage, but does not interfere with the rights of the owners of the soil, only so far as to secure this right of passage. If the plaintiffs had title to the adjoining lands, this reservation and the highway laid out upon it, could not interfere with their right to recover in this action. 1 *Root* 49. 118. *Fowler* v. *Savage,* 3 *Conn. Rep.* 90. *Watrous* v. *Southworth,* 5 *Conn. Rep.* 305. *Peck* v. *Smith,* 1 *Conn. Rep.* 103. *Hart* v. *Chalker,* 5 *Conn. Rep.* 31.

2. The plaintiffs denied, that the highway intended to be reserved in the original grant, was ever located over the *locus in quo*, but claimed, that if any highway was ever laid out

upon that reservation, it was over the upland. And as conducing to show this, they offered as witnesses several aged men, who testified, that when young, they had heard old men, now dead, say, that there was a travelled road or highway over the upland, as the plaintiffs claimed. This evidence was objected to, but admitted. The evidence was of that species of hearsay, called traditionary evidence. In *England*, such testimony has always been received to prove facts of a public or general nature, as in the present case. In this state, we have extended it yet further, and have admitted it to prove the boundaries of lands between individual proprietors; and we have no doubt as to the propriety of its admission on the trial below. 1 *Phil. Ev.* 183. 1 *Stark. Ev.* 60. *Outram* v. *Morewood,* 5 *Term Rep.* 123. *Porter* v. *Warner,* 2 *Root* 22. 1 *Sw. Dig.* 766. *Swift's Ev.* 123. *Higley* v. *Bidwell,* 9 *Conn. Rep.* 447.

3. The declaration described the demanded premises as being bounded *South* on the turnpike road. And the defendant claimed, that the actual lines of the turnpike, as surveyed and established, included within their limits the *Southerly* part of the lands sued for; and claimed, that such part at least could not be recovered in this suit. It was conceded, that the land sued for was bounded *South* by the travelled part of the turnpike; and if it was, the description in the declaration was sufficiently certain. This was what the pleader really intended, by the language he used. It cannot be supposed, that he referred to mere ideal lines, but to known and visible limits. And by bounding the land upon the turnpike road, as a legal intendment, he bounded it by the center line; so that in either view, this objection was untenable, and was properly disregarded by the court.

4. But a much more important question is presented in regard to the proper construction of the deeds under which the plaintiffs claim title to the land in controversy. And this was the real ground of dispute between the parties.

Two plans were presented and explained, on the trial. These were made by different surveyors, and constructed upon different principles, and in conformity with the different constructions put by the parties upon the deeds in question.

The deeds under which the plaintiffs more directly traced their title, were, 1. A deed from *Cullick Ely,* Esq. to *Adriel*

New-London,
July, 1839.

Wooster
v.
Butler.

*Ely*, of three small parcels of land, lying, as the plaintiffs supposed, *North* of the turnpike road; and, as they claimed, these were contiguous pieces, and included the demanded premises. 2. A deed from *Adriel Ely* to *Charles Ely*, the plaintiffs' grantor, of a parcel of land described as follows: " Beginning at a mear-stone, 40 feet *East* from the *South-East* corner of *Cullick Ely's* dwelling-house; thence *Northerly*, by said *Cullick's* land, to a stake and stones by a ledge of rocks; thence *Southerly*, by *Marsh Ely's land, as the wall stands*, to a stake and stones by the highway; thence *West*, to the first station; containing one third of an acre, more or less." This parcel, the plaintiffs suppose to be the same land described in *Cullick Ely's* deed to *Adriel*, as three pieces of land, and includes, as the plaintiffs claim, the demanded premises.

*Asa Roath*, Esq. who made the survey and plan for the defendant, commenced his survey forty feet *East* of the *South-East* corner of *Cullick Ely's* dwelling-house, and run according to the directions given in the aforesaid deed, " *Northerly*, by *Cullick Ely's* land, to a point at the ledge of rocks." *Richard Selden*, Esq. who surveyed this land for the plaintiffs, and made the plan used by them on the trial, commenced his survey at the same point, and run to the same point at the ledge of rocks. The next line, as given in the deed of *Adriel Ely* to *Charles Ely*, is, " *Southerly*, by *Marsh Ely's* land, as the wall stands, to a stake and stones, by the highway." The supposed ancient wall referred to, run only a part of the way in *Marsh Ely's line*, by the ledge of rocks, and then diverged from that line, but did not extend to the highway. Nor were there any stakes or stones at any point on the highway constituting a boundary.

*Roath* considered the ancient wall as the governing boundary and line, and followed that as far as it extended, in making his survey, without regard to the line of *Marsh Ely's* land; and then, in the last course of the wall, extended his line to the highway; and thus included a little less than one third of an acre, but excluded the demanded premises.

*Selden*, on the contrary, considered the ledge of rocks as being *Marsh Ely's* line, and followed that, in a *South-Easterly* direction to the highway, regardless of the course of the wall after it had diverged from that line; and by his survey, he

enclosed a little more than one third of an acre, and included the land in controversy.  *Charles Ely*, under his deed from *Adriel Ely*, had entered upon the disputed land, and had occupied it, for several years, without any claim or controversy from *Adriel Ely*, or any other person.

The defendant claimed, that the ancient wall was the controuling line, a known and prominent boundary, which should have governed in the construction of the deed ; and he claims, that the court erred in saying to the jury, that they were at liberty to regard the ledge of rocks in determining the title to this land, and to depart from the course of the wall, whenever that departed from *Marsh Ely's* line, if they believed that his line was determined by the course of the ledge.

That the construction of written documents is a matter of law, and is not, in ordinary cases, to be submitted to the jury, as a matter of fact, is true ; but where the doubt is produced, by the existence of collateral and extrinsic facts, not appearing upon the instrument, its consideration ceases to be a matter of mere legal construction, and the intention of the parties is to be sought for, by a recurrence to the state of facts, as they existed when the instrument was made, and to which the parties are to be presumed to have had reference.   The ambiguity, in such case, is a latent one, which may be explained, by parol evidence, and submitted to the jury.   Several facts of this character existed in the present case, which rendered it uncertain what was intended by the language of the deed.   The deed seemed to refer to the ancient wall and to *Marsh Ely's* line as identical ; but they were not entirely so.   There was no stake and stones, as mentioned in the deed. The ancient wall, even if it had appeared certainly to stand in the same place as when the deed was executed, did not, as the deed expressed it, extend to the highway.   Under such circumstances, what could be done, but to refer them all to the jury ?   The ancient wall was, to be sure, if its exact ancient position was known, a very prominent and controuling boundary ; but it was not as much so, as the ledge of rocks, if that really constituted the line of *Marsh Ely's* land, as the plaintiffs claimed.   There were other facts, too, not without their importance in determining the real locality of the land described.   *Charles Ely*, under this description in his deed, had taken possession of this land, and had occupied it, for

many years, without objection or claim from *Adriel Ely,* or *New-London,*
any other person who could have had claim to it, if it was not *July, 1839.*
conveyed ; and thus a contemporaneous practical construc-
tion had been given to the deed, by all who could have had
any interest in it. *Jackson* d. *Schuyler* & al. v. *Vedder,* 3
*Johns. Rep.* 8. *Goodrich* v. *Ogden,* 7 *Johns. Rep.* 238. *New-
comb* v. *Smith,* 9 *Johns. Rep.* 100. *Jackson* d. *McDonald* v.
*McCall,* 10 *Johns. Rep.* 377. *Jackson* d. *Van Cortlandt* v.
*Van Corlaer,* 11 *Johns. Rep.* 123. *Jackson* d. *Schenck* v.
*Wood,* 13 *Johns. Rep.* 346. *Livingston* v. *Ten Broeck,* 16
*Johns. Rep.* 14. It was, therefore, certainly proper, as in all
other cases of this character, to submit to the jury the question,
which of two prominent objects was the true boundary, the
wall or the ledge. And as the jury, under the instructions of
the court, have found that the most prominent, as well as the
most certain and permanent boundary, was the true one, we
cannot say, that their verdict was against evidence.

We shall advise that there be no new trial.

The other Judges were of the same opinion, except WAITE,
J., who gave no opinion, the suit having been brought by him
as the next friend of the plaintiffs.

New trial not to be granted.