[No. 4686.   Decided September 26, 1903.]

FRANK DURAND, *Appellant,* v. MICHAEL J. HENEY, *Respondent.*[1]

CONTRACTS—LATENT AMBIGUITY—CONSTRUCTION—WHEN QUESTION FOR JURY. Where a contract with an Alaska transportation company gave plaintiff the exclusive hauling of all its freight to A, specifying price and conditions, and required plaintiff to have on hand a large equipment therefor (which part plaintiff performed) and contained the further clause that in case of the falling off of freight to A the plaintiff should have the "preference over others in hauling freight to B or other points;" and it appears that at the time of the execution of the contract the Canadian government was agitating the exclusion of aliens at A which would, and shortly did, result in the falling off of freight to A, the clause for preference right in hauling to B is not void for uncertainty or indefiniteness, but is within the rule that the construction of a written contract is for the jury and not the court where a latent ambiguity is produced by extrinsic facts, showing the intent of the parties, or requiring construction by persons experienced in the calling engaged in.

Appeal from a judgment of the superior court for King county, Bell, J., entered December 8, 1902, upon the verdict of a jury rendered in favor of the defendant by direction of the court. Reversed.

*Walker & Munn,* for appellant. Where a doubt is produced by extrinsic facts, the construction of the contract is not one of law for the court, but the ambiguity is a latent one to be explained by parol evidence and submitted to the jury. *Carstens v. Earles,* 26 Wash. 676, 67 Pac. 404; *Wooster v. Butler,* 13 Conn. 309; *Warner v. Miltenberger's Lessees,* 21 Md. 264, 83 Am. Dec. 573; *Bartlett v. Nottingham,* 8 N. H. 300; *Ginnuth v. Blankenship etc. Co.* (Tex.), 28 S. W. 828; *Wilcox v. Baer,* 85 Mo. App. 587; *Kelly v. Fejervary,* 111 Iowa 693, 83

[1]Reported in 73 Pac. 775.

N. W. 791; *Alworth v. Gordon,* 81 Minn. 445, 84 N. W. 454; *Wirth v. Kahlenberg,* 62 N. Y. Supp. 1030; *Thorn, etc. Co. v. St. Louis Expanded Metal etc. Co.,* 77 Mo. App. 21; *Camp v. Wilson,* 97 Va. 265, 33 S. E. 591; *Kanapolis Land Co. v. Morgan,* 1 Kan. App. 65, 41 P. 205; *Nashua Iron etc. Co. v. Chandler etc. Desk Co.,* 166 Mass. 419, 44 N. E. 348; *St. Louis S. W. Ry. Co. v. Bramlette,* (Tex. Civ. App.) 35 S. W. 25; *Enterprise Soap Works v. Sayers,* 55 Mo. App. 15; *Goodman v. Henderson,* 58 Ga. 567; *Deutmann v. Kilpatrick,* 46 Mo. App. 624; *Pollen v. Le Roy,* 23 N. Y. Sup. Ct. (10 Bosw.) 38; *Tiley v. Moyers,* 43 Pa. St. (7 Wright) 404; *Connecticut & P. R. Co. v. Baxter,* 32 Vt. 805. The part performance by the appellant was sufficient consideration to support the promise respecting freight to Bennett. *White v. Baxter,* 71 N. Y. 254; *Cottage Street etc. Church v. Kendall,* 121 Mass. 528.

*John P. Hartman,* for respondent. There was want of mutuality as to the freight to Bennett. *Clark v. Great Northern R. Co.,* 81 Fed. 282; *Blanchard v. Detroit etc. R. Co.,* 31 Mich. 43, 18 Am. Rep. 142; *Olney v. Howe,* 89 Ill. 557, 31 Am. Rep. 105; *Missouri K. T. R. Co. v. Bagley,* 60 Kan. 424, 56 Pac. 759; *Davie v. Lumberman's Min. Co.,* 93 Mich. 491, 53 N. W. 625. Contracts must be concurrent and obligatory upon both parties at the same time. *Utica & S. R. Co. v. Brinckerhoff,* 21 Wend. 139, 34 Am. Dec. 220; *American Cotton Oil Co. v. Kirk,* 68 Fed. 791; *Wilkinson v. Heavenrich,* 58 Mich. 574, 55 Am. Rep. 708; *Wagner v. Meakin,* 92 Fed. 76. The contract was too vague and uncertain to be submitted to the jury. *Barton v. Spinning,* 8 Wash. 458, 36 Pac. 439; *Pulliam v. Schimpf,* 109 Ala. 179, 19 South. 428; *Truitt v. Fahey,* 3 Pen. (Del.) 573, 52 Atl. 339; *Faulkner v. Des Moines Drug Co.,* 117 Iowa 120, 90 N. W. 585.

Dunbar, J.—This is an action for damages for the alleged breach of the following written contract:

"Memorandum of Agreement between Chas. E. Severance of Skagway, Alaska, and The Red Line Transportation Co., by its manager M. J. Heney, Witnesseth.

"That the said Chas. E. Severance agrees to haul and deliver freight in a good condition from Summit of White Pass to Atlin City, B. C., for the price of twelve (12) cents per pound. And The Red Line Transportation Co. by its manager M. J. Heney agrees to pay the above price per pound for all freight safely delivered at its destination. The said company further agrees to give said Severance the exclusive hauling of all its Atlin freight at above price provided he can handle same, it also agrees to do all horseshoeing and repairing at reasonable rates based on cost, also to secure to him the benefit of a construction rate on feed and supplies to end of travel. Also in the case of Atlin freight falling off to give him the preference over others in hauling freight controlled by it for Bennett or other points. Settlements to be made monthly and said Chas. E. Severance to be allowed to draw when necessary 75 per cent. on all bills of lading after same has been accepted by said company. The said Chas. E. Severance on his part agrees to have on hand at Summit of White Pass and ready to begin freighting by Feby. 10th, '99 sixty (60) head of good serviceable stock together with harness and full equipment necessary for handling said freight, and that he will put forth every effort to secure the safe and rapid transit of all freight entrusted to his care. It is hereby distinctly understood and agreed that all freight so handled must be delivered at its destination in as good condition as when received and that the said Chas. E. Severance shall be fully responsible for any loss or shortages which may occur through negligence of his teamsters or any other cause whilst freight is in his charge.

"Skagway, Alaska,            Chas. E. Severance.
"Jan. 23rd, 1899.      Red Line Transportation Co.
                              "By M. J. Heney, Mgr."

At the close of the testimony of both plaintiff and defendant, the plaintiff having disclaimed any claim for damages growing out of the failure to receive Atlin freight, the court took the case from the jury, or rather instructed the jury to bring in a verdict for the defendant, holding that the contract in relation to the Bennett freight was too indefinite and uncertain for enforcement. So that the question presented on this appeal is whether the meaning and purpose of the alleged contract is a question of law for the court or of fact for the jury.

It is conceded that the general rule is that the construction of written instruments is a question of law for the courts. We think it may also be conceded that there are certain well defined exceptions to this rule—as, where the identity of the subject-matter of a document, or its construction, depends upon collateral facts or extrinsic circumstances, the inferences from such facts, when they are proven, should be drawn by the jury. Where it is an enforcible contract, and the ambiguity arises as to the relative responsibilities and duties of the respective parties under the contract, which responsibilities and duties can be determined either by proof of the meaning of the terms used in the contract or by a showing of the circumstances surrounding the parties with reference to the subject-matter of the contract at the time it was entered into, and there is any controversy over such facts, undoubtedly such contract should be submitted to the jury, and its meaning determined by that tribunal by aid of such explanatory testimony. But whether or not the instrument sued on embraces all the necessary elements of a contract, such as parties, subject-matter, mutual assent, and consideration, is just as undoubtedly a legal question to be determined by the court. The first rule mentioned is founded in necessity, for words are frequently used in con-

tracts which have a technical or scientific meaning, or a meaning understood by certain tradespeople in a particular sense; or provincialisms may be employed where words or terms used would be meaningless beyond the boundaries of the locality where the contract was entered into; and these words, while conveying a definite meaning to the contracting parties, cannot be intelligently interpreted by either judge or jury, testimony having to be resorted to to explain them. Where there is any dispute as to what they mean, the inferences from such testimony must be drawn by the jury. A large array of authorities have been cited by both respondent and appellant. We have carefully examined them, but we think they only sustain the law as announced above, and that there is not so much question as to what the law on the subject actually is ˊ to whether the facts surrounding particular cases bring the case within the general rule or the exception.

*Carstens v. Earles,* 26 Wash. 676, 67 Pac. 404, is cited and relied upon by the appellant in support of his contention, while it is claimed by the respondent that the same case announces the law as contended for by him. The instruction under consideration in that case was the following:

"You are further instructed that all contracts, whether written or oral, that have been introduced in this case, are before you for your consideration and interpretation, together with the circumstances and surroundings of the parties, and it is for you to determine from all the circumstances and evidence of the case, the attitude and conduct of the parties, what was the real intention of the parties."

The court then says:

"It is urged that the instruction is in violation of the rule that contracts are to be construed by the court. Such

is undoubtedly the general rule where there are no ambiguities, no conflicting contracts, and where there are no questions of abrogation or rescission calling for an interpretation. But where there are disputes as to the intentions of the parties to the written agreement, and questions of rescision by disputed oral agreements, then the consideration of the written contract in connection with the oral contracts becomes a question for the jury. In *Warner v. Miltenberger's Lessees,* 21 Md. 264, 83 Am. Dec. 573, it is said: 'But in our opinion, this question, as it arose in this case, was properly submitted to the jury. In support of this view, we refer to the case of *Wooster v. Butler,* 13 Conn. 309, where the point was carefully examined, and decided in accordance with what we consider the weight of authority. That case involved the construction of a grant, and the court say: "That the construction of written documents is a matter of law, and is not, in ordinary cases, to be submitted to the jury as a matter of fact, is true; but where the doubt is produced by the existence of collateral and extrinsic facts, not appearing upon the instrument, its consideration ceases to be a matter of mere legal construction, and the intention of the parties is to be sought for by a recurrence to the state of facts as they existed, when the instrument was made, and to which the parties are to be presumed to have reference. The ambiguity, in such cases, is a latent one, which may be explained by parol evidence, and submitted to the jury." ' "

We think that what was said by this court in the above case, as well as in the case therein quoted, tends very strongly to sustain appellant's contention. It appears from the record, that the White Pass & Yukon Route was a corporation owning and operating a railroad from Skagway, Alaska, to White Pass at the summit of the Coast Range, a distance of twenty-one miles from Skagway; that said corporation, among other things, was contracting for and carrying freight from Skagway to various points in the interior of Alaska, British Columbia, and

Yukon Territory, by way of its railroad to White Pass, and thence by pack trains consisting of mules and horses; that the defendant had a contract with said corporation, whereby the defendant had exclusive handling of all freight from White Pass to points of destination in the interior of Alaska, British Columbia, and Yukon Territory for which freight should be booked or contracted for by the White Pass & Yukon Route at Skagway; that the Canadian government was at that time agitating the question of prohibiting aliens from obtaining title to placer mines in the Atlin country, and a law to that effect was passed by the British Columbia legislature shortly after the execution of this contract, which accounted for the failure of the Atlin freight. When the defendant entered into a contract with the plaintiff in this case, it was probably with reference to this condition of things, which may tend to throw some light upon the seeming obscurities of the contract. Certain it is that there are ambiguities in this contract which need explanation, and disputes as to the intention of the parties to. the written agreement. Under such circumstances, as was said by this court in the case above quoted, the construction of the contract becomes a question for the jury; and the doubts that cloud the contract in this case, being produced by the existence of collateral, extrinsic facts, as was said in *Wooster v. Butler, supra,* "the intention of the parties is to be sought for by a recurrence to the state of facts as they existed when the instrument was made and to which the parties are to be presumed to have reference." The trial court, in passing on this question, after stating that Severance, with whom the contract was made (the plaintiff in this case being Severance's assignee), and Heney, the defendant, being familiar with

the conditions, anticipated that the freight from White Pass to Atlin might possibly fall off, and therefore entered into the agreement with reference to the Bennett freight, both foreseeing the contingency which afterwards did arise, viz., the falling off partially or altogether of the Atlin freight, said: .

"The various conditions and obligations of the contract clearly refer to the hauling of the Atlin freight; the gathering of the equipment; the size of the equipment; the amount to be paid for the transportation of freight, and all other features of the contract, except the one clause, to which I shall hereafter refer, refer to the hauling of freight from the terminus of the White Pass road to Atlin. The clause to which I refer is the one discussed by counsel at length, and which is as follows: 'Also in the case of Atlin freight falling off, to give him the preference over others in hauling freight controlled by it, to Bennett and other points.' With the other features of the contract eliminated, this clause practically stands alone for construction, and in construing it we can get little or no aid from the other parts of the contract in regard to the Atlin freight. The parties provided that the plaintiff should have the exclusive handling providing for the other freight; the agreement is simply to give him the preference over others; so, as I say, throughout the contract, the various clauses refer only to the Atlin freight, and it leaves this part of the contract standing alone for construction."

The court then proceeds to say that the clause is too indefinite and uncertain to base a recovery upon. But we are not convinced, from reading the contract, that the various conditions and obligations of the contract do refer to the hauling of the Atlin freight. The contract must be construed all together, and was evidently intended by the parties to it to be so construed. The very fact stated by the court that the parties to the contract fore-

saw the possibility of the failure of the Atlin freight, and made provision in regard to the hauling of the Bennett freight, tends to show that that clause was placed there for the protection of the plaintiff, to insure him against loss, by a substituted employment in case of the failure of the Atlin freight. The partial execution of the contract on his part by getting together the stock which he did and transporting it to the terminus of the White Pass route, was justified only upon the theory that, if the Atlin freight failed, he would still have the Bennett freight to recompense him for his outlay. It is true that there is no stated price provided in the contract for the conveyance of the Bennett freight, but in such case the ordinary or going price is always presumed, and, with the exception of the stated price, the contract with reference to the Bennett freight seems to be about as definite as that portion which relates to the Atlin freight.

It seems to us that, while this contract is brief and ambiguous, it is not devoid of the essential requisites of a contract; that there are proper parties to the contract, proper subject-matter, consideration, and mutuality, and part performance on the part of the plaintiff. It is a uniform statement of the law that, in the construction of contracts, if there is a doubt as to their validity, that doubt should be solved in favor of the contract. The rule announced above, that where there are latent ambiguities, the construction is for the jury, it seems to us applies to just such a case as this. And we think that the question of what is meant by the terms of this contract, and especially by the provision, "also in the case of the Atlin freight falling off, to give him the preference over others in hauling freight controlled by it for Bennett or

other points," is a question which might very profitably, under the circumstances surrounding this case, be submitted to the testimony of packers and people who are engaged in the transportation business. To them the language might be significant, and the rights and duties of the parties clearly understood. The issues were directly made up, the defendant denying all the allegations of the complaint. The testimony adduced was not only extensive, but exhaustive, and we think that it would be a safer rule under the circumstances to submit the construction of this contract to a jury.

The judgment will be reversed, and a new trial ordered.

ANDERS, HADLEY, and MOUNT, JJ., concur.

FULLERTON, C. J., concurs in the result.