[No. 31926. Department One.   March 6, 1952.]

NORA KEETER, *Individually and as Administratrix, Respondent,* v. JOHN GRIFFITH, INC., *Appellant.*[1]

*Gavin & Robinson,* for appellant.

*Tonkoff & Holst,* for respondent.

GRADY, J.—This action was brought by respondent to recover a judgment for the value of pears sold and delivered to appellant pursuant to the terms of a written contract. A trial before a jury resulted in a verdict for respondent.

The respondent grew a crop of pears in 1950. The appellant was engaged in the business of buying fruit for itself

[1]Reported in 241 P. (2d) 213.

for resale and also for others. It does not appear that appellant was a selling broker or a commission merchant.

At the commencement of the trial, respondent offered, and the court received in evidence, without objection, three contracts made by the use of printed forms, with certain parts written in by appellant. The printed matter indicated the form was used when the relationship between the contracting parties was to be that of seller and buyer. The contracts were dated August 21st, 26th, and 30th, respectively. In the first contract, respondent was the seller and a party for whom appellant was acting as a purchasing agent was the buyer. The second contract was one of sale and purchase of Nos. 1 and 2 cannery grade pears at designated prices per ton. The third contract, which is the subject of litigation, also purports to be a seller-buyer contract. It sets forth that Bartlett No. 1 cannery grade shall be sold for a price of $110 per ton. With reference to the other pears grown by respondent, the agent of appellant wrote in the printed form the following:

"Bartlett pears to go on a Green fruit pack out. No. 1s to be put back in storage for cannery. This cancels the other cannery grade contract."

Counsel for respondent made inquiry of a conversation she had with appellant just prior to the preparation of the last contract about the price to be paid for the pears other than the No. 1 grade. Objection was made that the testimony would be in contravention of the parol evidence rule. The arguments made indicated to the court that respondent claimed the contract was one of sale and purchase. The appellant claimed the contract was for the sale and purchase of the No. 1 cannery grade pears, but with reference to the others it was to be her selling agent on the open market. The court was of the opinion that the contract was of such an ambiguous character as to warrant reception of evidence of the respective versions of the parties and the submission of their theories to the jury.

■■ We are in accord with the method of procedure adopted and carried out by the court. The applicable rules in the situation presented to the court are so clearly stated and explained in *Durand v. Heney*, 33 Wash. 38, 73 Pac. 775, that we content ourselves by quoting therefrom as follows:

"It is conceded that the general rule is that the construction of written instruments is a question of law for the courts. We think it may also 'be conceded that there are certain well defined exceptions to this rule—as, where the identity of the subject-matter of a document, or its construction, depends upon collateral facts or extrinsic circumstances, the inferences from such facts, when they are proven, should be drawn by the jury. Where it is an enforcible contract, and the ambiguity arises as to the relative responsibilities and duties of the respective parties under the contract, which responsibilities and duties can be determined either by proof of the meaning of the terms used in the contract or by a showing of the circumstances surrounding the parties with reference to the subject-matter of the contract at the time it was entered into, and there is any controversy over such facts, undoubtedly such contract should be submitted to the jury, and its meaning determined by that tribunal by aid of such explanatory testimony. But whether or not the instrument sued on embraces all the necessary elements of a contract, such as parties, subject-matter, mutual assent, and consideration, is just as undoubtedly a legal question to be determined by the court. The first rule mentioned is founded in necessity, for words are frequently used in contracts which have a technical or scientific meaning, or a meaning understood by certain tradespeople in a particular sense; or provincialisms may be employed where words or terms used would be meaningless beyond the boundaries of the locality where the contract was entered into; and these words, while conveying a definite meaning to the contracting parties, cannot be intelligently interpreted by either judge or jury, testimony having to be resorted to to explain them. Where there is any dispute as to what they mean, the inferences from such testimony must be drawn by the jury. A large array of authorities have been cited by both respondent and appellant. We have carefully examined them, but we think they only sustain the law as announced above, and that there is not so much question as to what the law on the subject actually is as to whether the facts surrounding

particular cases bring the case within the general rule or the exception."

The rules pronounced by the court in the *Durand* case have been followed in *Dioguardi v. Haddow,* 167 Wash. 62, 8 P. (2d) 978; *Stusser v. Gottstein,* 178 Wash.˙ 360, 35 P. (2d) 5; and *State Bank of Wilbur v. Phillips,* 11 Wn. (2d) 483, 119 P. (2d) 664. They are also discussed in *Keyser v. Weintraub,* 157 Md. 437, 146 Atl. 275, 65 A. L. R. 641, and annotations thereto.

The applicability of the foregoing rules we think is made apparent from a comparison of the three contracts in evidence and testimony given by respondent which was accepted by the jury as being true. Respondent stated that, after two loads of pears were received by appellant under the˙ second contract, its agent, Mr. Griffith, informed her that she was losing $28 a ton by letting her pears go as cannery pears and that he would give her $100 a ton for the No. 2 pears and $48 per ton for the unclassified; that he then prepared the third contract, which she signed. Respondent further stated that she did not observe that the purchase price for the grades of pears other than the No. 1 grade had not been put in the contract as in the case of the other two contracts; that she did not look at the contract as she signed it because she did not have her glasses with her; that she had confidence in Mr. Griffith and believed he would insert the agreed price as he had done when the other contracts were prepared.

When the course of dealing between the parties prior to the making of the third contract is considered, along with the three contracts and the testimony of respondent, as well as the evidence submitted by appellant, we think it is very clear that some of the above-quoted part óf the contract written therein by appellant is of doubtful meaning outside of the business of growing, selling, and buying of pears; and while no doubt the words used may have conveyed a definite meaning to the contracting parties, they cannot be intelligently interpreted by either a judge or jury without testimony to explain them. Because of such doubt

as to the meaning of the words used, the question of what kind of a contract the parties intended to make was for the jury to determine.

■ It may be said that the court did not submit the question of the meaning of the contract to the jury in the same way that was done in some of the above-cited cases. An examination of the instructions given by the court shows that the disputed versions of the respective parties were placed before the jury and it was instructed to render its verdict accordingly. We are inclined to the view that the method of submission used by the court was the preferable one for such a situation as was presented. The jury found the facts to be such that it would follow that the contract would be construed by the court to be one of sale and purchase. In such an event, the omission of the agreed prices could properly be supplied by parol evidence, it not being inconsistent with the written contract. *Interstate Engineering Co. v. Archer,* 64 Wash. 629, 117 Pac. 470; *Buyken v. Ertner,* 33 Wn. (2d) 334, 205 P. (2d) 628.

■ The appellant urges that the court erred in giving an instruction to the jury based upon the statutory duty to make an accounting as provided by what is known as the commission merchant act. The statutory law upon which the instruction was based had been repealed, but this was not called to the attention of the trial judge at the time the case was submitted to the jury. The instruction did not purport to fix liability upon appellant in the event the jury found it had not complied with the statutory mandate as to accounting. Our attention has not been called to any issue tendered by either party which would require the giving of such instruction. It is apparent that it played no part in arriving at the verdict returned. We are satisfied that the error was not prejudicial.

The judgment is affirmed.

SCHWELLENBACH, C. J., MALLERY, DONWORTH, and WEAVER, JJ., concur.