[No. 34265. Department Two. November 21, 1957.]

LARRY H. FORRESTER et al., Appellants, v. ROBERT W. CRAD-
DOCK et al., Respondents and Cross-appellants.[1]

[1]Reported in 317 P. (2d) 1077.

*Lycette, Diamond & Sylvester* and *Lyle L. Iversen,* for appellants.

*Lenihan & Ivers, Carl P. Jensen,* and *Joseph S. Ivers,* for respondents and cross-appellants.

DONWORTH, J.—Appellant contractors brought this action to enforce a lien which they claimed in connection with the construction, pursuant to contract, of a residence on land owned by respondents. Respondents answered, interposing several matters of affirmative defense, and cross-complained, seeking damages for alleged defects in workmanship and material and for the failure of appellants to fully complete the contract according to its terms and the plans and specifications referred to therein.

The cause was tried to the court, which found partially in favor of each litigant, awarding damages as hereinafter discussed.

The record before us consists solely of the pleadings, findings of fact (together with exhibits relative thereto), conclusions of law, and judgment. It does not contain the transcribed testimonial evidence adduced during the course of the ten-day trial of this cause in superior court.

Appellants do not challenge the findings of fact as entered, but contend that the findings do not support the judgment. They assert that the court misinterpreted the contract and erred in the assessment of damages.

Respondents have cross-appealed from that portion of the final judgment by which the trial court declined to allow respondents, as prevailing parties, an attorneys' fee (in the amount found by the trial court to be reasonable) incurred in defending against and defeating appellants' action to foreclose their claimed lien.

The trial court determined the building contract to be "a cost-plus contract with a guaranteed maximum price." Appellants contend that this interpretation of the contract is contrary to the terms expressed therein and is, therefore, erroneous. Paragraphs 4 and 5 of the contract (entitled "COST PLUS CONSTRUCTION CONTRACT") read as follows:

"4. FEE FOR SERVICES. In consideration of the performance of the contract the OWNER agrees to pay the CONTRACTOR as its compensation or fee for its services herein the sum of 7% of all labor, materials, supervision and state sales tax. *The total maximum cost of const. to the owner, including all labor, material, supervision, overhead and profit shall not exceed $19,506.60, and the contractor shall not be obligated to any amount in excess of $19,506.60 unless owner will be liable.*

"5. COSTS TO BE PAID OR REIMBURSED. OWNER agrees to pay directly or to reimburse the CONTRACTOR for the entire cost of the work including all costs and expenses of whatsoever kind or nature reasonably attributable either directly or indirectly to the prosecution and performance of this contract. Such costs and expenses shall be all inclusive, holding the CONTRACTOR free and harmless of all claims and demands arising under or by reason of this contract." (Italics ours.)

(The last sentence of paragraph 4, italicized above, is a typewritten insertion, supplementing the printed portions of the contract.)

Appellants argue that the trial court wholly disregarded paragraph 5 in interpreting the contract. It is asserted that the last phrase of the italicized provision of paragraph 4,

*viz.,* "and the contractor shall not be obligated to any amount in excess of $19,506.60," when considered in connection with paragraph 5 of the contract, is plain and unambiguous; that the meaning of the language employed is that the contractor would be relieved of further performance according to the plans and specifications after expending the sum of $19,-506.60 toward the cost of completion; that, after exceeding that sum, the appellants would be liable for completion only if the owners (respondents) would also be liable.

While appellants' argument is logically appealing, in considering the particular portions of the contract to which it relates we are unable to concur with their contention that the whole contract is free of ambiguity.

The typewritten sentence italicized above, which provides that "The total maximum cost of const. to the owner, including all labor, material, supervision, overhead and profit shall not exceed $19,506.60 . . . " creates an ambiguity between paragraphs 4 and 5. The contract could thus be interpreted either as a contract to complete construction of a dwelling according to the plans and specifications referred to therein for a fixed maximum price (paragraph 4), or it could be interpreted as a wholly reimbursable, cost-plus (percentage) contract (paragraph 5) as urged by appellants.

█ Once having determined that the contract was ambiguous in relation to the amount of compensation (or fee) to be paid to appellants, it was proper for the trial court to receive evidence as to the facts and circumstances leading up to the execution of the contract, and, as trier of the fact, determine the intention of the parties. See *Henry v. Morrow*, 49 Wn. (2d) 270, 273, 300 P. (2d) 574; *Brown v. Poston*, 44 Wn. (2d) 717, 721, 269 P. (2d) 967; *Keeter v. John Griffith, Inc.*, 40 Wn. (2d) 128, 131, 241 P. (2d) 213; *State Bank of Wilbur v. Phillips*, 11 Wn. (2d) 483, 489, 119 P. (2d) 664; and *Durand v. Heney*, 33 Wash. 38, 41, 73 Pac. 775.

Finding of fact No. 9 entered by the trial court recites, in part:

"Construing the contract between the parties hereto, the court is firmly convinced from the terms thereof and the

testimony of the parties that it is a cost-plus contract with a guaranteed maximum price. That is the only construction permitting the use of the phrase typewritten into paragraph 4 thereof, which phrase is as follows: ·

'The total maximum cost of construction to the owner, including all labor, materials, supervision, overhead and profit, shall not exceed $19,506.60—'

and then follows the controversial language. Continuing the quotation:

'—and the contractor shall not be obligated to any amount in excess of $19,506.60 unless the owner will be liable.'

"The plaintiff Yoder and the defendant Marjorie Craddock testified that it was the intention of the parties hereto by such typewritten addition to said paragraph 4, that if the cost of the building was less than $19,506.60 the defendants would receive the benefit of the saving; and Mrs. Craddock testified that if it was more than $19,506.60 it was to be the plaintiffs' [appellants'] loss, unless the excess resulted from extras or changes, in which event plaintiffs would become liable to the suppliers, material men, and laborers who furnished material and labor for such extras and changes, and if plaintiffs became obligated therefor, then the defendants would also be liable, but not otherwise. This interpretation of the contract is the only interpretation consistent with a number of items set out in the description of materials; special equipment, . . ."

In making this finding of fact, the trial court had the benefit of the testimony of the parties concerning their respective intentions as they were reduced to writing in their equivocal contract. Since the evidence considered by the trial court (in reaching its conclusion resolving the ambiguity of terms in favor of respondents) is not before this court, it is impossible for us to go beyond the written contract in order to give its controversial provisions a meaning different from that found by the trial court. Hence, we are unable to conclude that the court erred in interpreting the contract as it did.

For the reasons above stated, appellants' fifth assignment of error (relating to a wholly reimbursable, cost-plus contract) is without merit.

Appellants' sixth assignment of error is directed to the failure of the trial court to award appellants the full amount of their expenditures under the contract. This contention is also closely interrelated with the trial court's interpretation of the contract. But it is urged that any amount expended in excess of $19,506.60 by appellants toward completion of the dwelling constituted "extras" for which appellants should be entitled to payment.

■ Appellants argue that our decisions in *Hopkins v. Ulvestad*, 46 Wn. (2d) 514, 282 P. (2d) 806 (1955), and *Eggers v. Luster*, 32 Wn. (2d) 86, 200 P. (2d) 520 (1948), are in point. However, a review of those cases clearly reveals that in each case the work, for the performance of which the contractor (or subcontractor) was allowed recovery, was *without* the scope of the initial contract and in addition to it. In the present case, all work performed by appellants toward the completion of the house, as detailed in the plans and specifications, was *within* the scope of the contract. Under the interpretation of the contract adopted by the trial court, further performance by appellants, after expending the sum of $19,506.60, would not constitute "extras," but would amount to a mere fulfillment of appellants' existing obligation, *viz.*, to complete construction of the dwelling according to the plans and specifications. It follows that appellants were not entitled to any amount in excess of the guaranteed maximum price expended in compliance with their duty of performance.

The trial court found that the difference between the value of the house as constructed and its value had it been constructed according to plans and specifications was $3,500. Of this amount, $2,600 was attributable to cracks in the foundation walls.

The court found appellants to be entitled to:

| | |
|---|---|
| Payment received | $18,925.96 |
| Certain specified extras | 1,193.00 |
| Service fee and overhead (extras) | 155.09 |
| State sales tax | 675.48 |
| Total | $20,949.53 |

As a set-off against the gross amount of $20,949.53, respondents were awarded the sum of $4,043.75, a part of which sum ($1,443.75) is represented by the cost of completing, or the cost of repairing, several items required under the plans and specifications, or which were defective as constructed. The remaining balance of $2,600 represents the reduced market value of the house due to cracks in the defective foundation walls.

The court subtracted $4,043.75 from $20,949.53 and found that appellants were entitled to a net amount of $16,905.78. But since appellants had previously received $18,925.96, respondents were entitled to the difference of $2,020.18. Judgment was entered accordingly.

Appellants contend that the court erred in permitting respondents to offset the sum of $4,043.75 against the amount which appellants were found to be entitled; that the maximum set-off allowed respondents should have been $3,500.

For the reasons stated in *White v. Mitchell*, 123 Wash. 630, 213 Pac. 10 (1923), this court has consistently followed the principles therein announced:

"Where the builder has substantially complied with his contract, the measure of damages to the owner would be what it would cost to complete the structure as contemplated by the contract. *There is a substantial performance of a contract to construct a building where the variations from the specifications or contract are inadvertent and unimportant and may be remedied at relatively small expense and without material change of the building; but where it is necessary, in order to make the building comply with the contract, that the structure, in whole or in material part, must be changed, or there will be damage to parts of the building, or the expense of such repair will be great, then it cannot be said that there has been a substantial performance of the contract.* Generally, where there has not been such substantial performance, the measure of the owners' damage is the difference between the value of the building as constructed and its value had it been constructed in accordance with the contract." (Italics ours.)

Two alternative measures of damage are enunciated in the above quotation. The answer as to which one should be ap-

plied to a given state of facts depends upon whether there has—or has not—been a substantial performance of the contract, as defined in the italicized portion thereof.

In the present case, the trial court concluded, in part:

"Plaintiff [appellants] *have not substantially performed* their contract obligation to defendants herein . . ." (Italics ours.)

Having determined that appellants had not substantially performed their contract, it was error for the trial court to award respondents a sum greater than $3,500, the amount found to be the difference between the value of the building as constructed and its value had it been constructed in accordance with the contract.

We have carefully reviewed *Lidral v. Sixth & Battery Corp.,* 47 Wn. (2d) 831, 290 P. (2d) 459 (1955), and *Dally v. Isaacson,* 40 Wn. (2d) 574, 245 P. (2d) 200 (1952), cited by respondents in support of the apportionment of damages as made by the trial court. But we fail to find in either of those cases a factual similarity to the present case which would justify the court in awarding damages on any basis different from that applied in *White v. Mitchell, supra; Mahan v. Springer,* 155 Wash. 98, 283 Pac. 667 (1930); *Eckhardt v. Harder,* 160 Wash. 207, 294 Pac. 981 (1931); and *Kenney v. Abraham,* 199 Wash. 167, 90 P. (2d) 713 (1939). This rule was recognized but not applied (because the contractor had substantially performed his contract) in *Bernbaum v. Hodges,* 43 Wn. (2d) 503, 261 P. (2d) 968 (1953).

Appellants also contend that they were entitled to, and should have been allowed, the full contract price of $19,-506.60, rather than $18,925.96.

Paragraph I of respondents' first affirmative defense to appellants' complaint alleges:

"Plaintiffs [appellants] have been fully paid for their performance under the terms of said contract and no sum is now due or owing to plaintiffs from defendants on account of said contract except the sum of $580.64 which defendants are entitled to retain until plaintiffs complete performance of said contract, as hereinafter set forth.".

Respondents therefore admit that appellants are entitled to the additional $580.64 upon completion of the contract according to plans and specifications.

■ In determining the amount which respondents were entitled to offset against the contract price, the court deducted from the market value of the house if completed according to the plans and specifications ($20,750) the amount found to be the market value of the house as completed ($17,250). In so doing, the trial court awarded respondents the equivalent of performance, *i.e.*, damages in lieu thereof. If the house had been completed according to plans and specifications, appellants would have been entitled to the "maximum guaranteed price" of $19,506.60, as found by the court. It follows that appellants should have been awarded the contract price ($19,506.60) irrespective of the amount ($18,925.96) which the mortgagee-bank had theretofore disbursed.

On their cross-appeal, respondents contend that they are entitled to an attorneys' fee (in the amount found by the trial court to be reasonable) for successfully establishing their defense against appellants' lien claim. The trial court refused to include such fee in the judgment on the ground that such an award was without precedent in this state. Respondents' contention is based upon Laws of 1893, chapter 24, § 12, p. 37 [cf. RCW 60.04.130], which provides, in part:

"The court *may* allow, as part of the costs of the action, the moneys paid for filing or recording the claim, and a reasonable attorney's fee in the superior and supreme courts." (Italics ours.)

It is argued that the statute contemplates the awarding of an attorney's fee as a part of the costs of the action; that an attorney's fee in a lien foreclosure action, as well as taxable costs, follows the judgment (*Lidral v. Sixth & Battery Corp.*, *supra*, p. 836); and that, since respondents prevailed in the trial court by defeating the lien claim, and also succeeded in obtaining a judgment in their favor on their cross-complaint, they should be entitled to an attorneys' fee.

■ The above quoted statute is not mandatory, but, by its terms, permissive, leaving the matter of allowing attor-

neys' fees, as well as the amount thereof, to the discretion of the superior court. See *Montgomery v. Karavas*, 45 N. M. 287, 114 P. (2d) 776, 783 (1941); also, *Hughes & Co. v. Flint*, 61 Wash. 460, 465, 112 Pac. 633 (1911).

Assuming, without deciding, that, under the Laws of 1893, chapter 24, § 12, it was within the discretion of the trial court to award respondents a reasonable attorneys' fee because they were partially successful in defending against the debt for which appellants claimed a lien upon and sought foreclosure against respondents' property, we do not think that, for the reasons stated below, respondents are entitled to any allowance for attorneys' fees in either court.

In this case, appellants claimed a mechanic's lien in the amount of $5,603.97. Since we have found that appellants should have been awarded $2,604.21 (less than one half of the amount claimed), they would, in the absence of respondents' cross-complaint, have been entitled to foreclosure of their lien only to that extent. Therefore, appellants partially prevailed in their foreclosure action.

However, the amount of the judgment of foreclosure was wiped out by offsetting against it the larger sum which the trial court found respondents to be entitled to recover on their cross-complaint against appellants. It is significant to note that respondents sought damages for breaches of the building contract in the amount of $12,550, but prevailed in establishing their right to recover only $3,500 (less than one third of the amount sued for). Furthermore, had respondents prosecuted their cause of action for breach of contract independently of appellants' lien foreclosure action, respondents would not have been entitled to any attorneys' fee, because the statute has no application to any action other than one relating to the foreclosure of a mechanic's lien. The subject matter of respondents' cross-complaint is clearly without the statute.

Thus we have a case where appellants and respondents each claimed—in good faith—the right to recover from the other more than double the amounts to which they have been found to be respectively entitled. Respondents were

compelled to defend against appellants' foreclosure action for the total amount of the lien claim. In this defense, respondents were only partially successful.

 While it cannot be said that the ground upon which the trial court relied in refusing to award respondents an attorneys' fee was an exercise of discretion, nevertheless, under the facts of this case, we are compelled to hold that an award of an attorneys' fee to either party would have been an abuse of discretion. In view of that conclusion, it is unnecessary for us to consider whether the amount found by the trial court was reasonable.

 Where a judgment is correct, it will not be reversed because the court gave a wrong or insufficient reason for its rendition. *LaHue v. Coca Cola Bottling, Inc.*, 50 Wn. (2d) 645, 314 P. (2d) 421 (1957). Since the trial court was correct in refusing to award respondents an attorneys' fee, the judgment on respondents' cross-appeal must be affirmed.

In view of our conclusions hereinabove expressed, appellants are entitled to recover $580.64 *more* than the sum awarded them by the trial court, and respondents are entitled to recover $543.75 *less* than the amount they were awarded by the trial court. The total of these amounts ($1,-124.39) must be deducted from respondents' judgment of $2,020.18, leaving a net judgment of $895.79.

Since appellants were partially successful in reducing the amount of respondents' judgment rendered by the trial court, they shall recover one half of their taxable costs in this court.

As so modified, the judgment is affirmed on both the appeal and cross-appeal.

HILL, C. J., ROSELLINI, OTT, and FOSTER, JJ., concur.