## STATE *v.* JOEL PATTERSON.

Cumberland. Opinion delivered November 12, 1878.

*Trial. Law and fact. Extortion.*

Writings which can be expounded without the aid of extrinsic facts, are for the court to interpret; if aided by extrinsic facts which are controverted, either the jury find the facts and the court interprets the writing in view of such finding, or the court instructs the jury hypothetically what the construction shall be according as the facts may be found by them.

If the writing is introduced as a fact or circumstance in connection with oral evidence to prove some other proposition of fact in issue, while the court may declare what meaning the writing is capable of, the inference to be drawn from it and its weight and value are usually for the jury to settle.

The respondent sent to the complainant a letter reading thus: "Freeport, Sept 31 you may if you pleas you can enclose ten dollers in an letter cend it to Joseph Boothby Yarmouth me or els you will be enbited next tuesday or complained of me no fool —— demacratt head quarters." *Held,* that the letter is, *prima facie,* a "communication threatening to accuse another of a crime or offense with the intent to extort money," and that "enbited" may be regarded as written for the word "indicted."

ON EXCEPTIONS from the superior court.

INDICTMENT under R. S., c. 118, § 23, for maliciously threatening to accuse the complainant, Oliver H. Briggs, of some offense with intent to extort money from him, by sending him a written communication of the following tenor:

"Freeport, Sept 31
you may if you pleas you can enclose ten dollers in an letter and cend it to Joseph Boothby Yarmouth me or els you will be enbited next tuesday or complained of me no fool                    demacratt head quarters."

The presiding judge stated to the jury that the construction of the written communication was a question of law for the court, and instructed them that, so far as its terms were concerned, it did constitute a threatening communication within the meaning of the statute, and that, if all other facts necessary to establish the guilt of the respondent were proved, a verdict of guilty should be rendered.

The defendant alleged exceptions.

*J. Howard, N. Cleaves & H. B. Cleaves,* for the defendant, to the point that in a prosecution for sending a threatening letter,

the question whether it contained a threat, if doubtful, is to be decided by the jury, cited Girdwood's case, 1 Leach, C. C. L. 169. *Rex* v. *Tyler*, 1 Moody's Crown Cases, 428 (1835). *Regina* v. *Walton*, Crown Cases by Leigh & Cave, 228, 298, (1863). 1 Stark. Ev. 525. 1 Greenl. Ev. § 277. The counsel contended that the document did not sustain the indictment; did not in terms contain any threat, and that it might have been intended as prophetic or cautionary or jocose.

*C. F. Libby*, county attorney, for the state.

Everything was left to the jury except what the court declared was the legal effect of the paper, if all else was proved to their satisfaction. " me " in the letter means " Maine ;" " enbited " is "indicted" clumsily written; and even without this term, the threat of a complaint remains. To the point that whether a letter contains such a demand (viz, that forbidden by the statute), is a matter of construction on which the court will instruct the jury, counsel cited, as directly in point, *Robinson's case*, East's Crown Law, 110–115.

PETERS, J. The respondent was indicted, for sending to the complainant a threatening letter with the intent to extort money. The first question that arose at the trial was whether it was the province of the court or of the jury to interpret the letter.

As a rule, both in civil and criminal cases, cases of libel to some extent excepted, writings are to be expounded by the court. Whenever a paper can be understood from its own words, its interpretation is a question of law for the court. *Nichols* v. *Frothingham*, 45 Maine, 220. *Nash* v. *Drisco*, 51 Maine, 417. *Fenderson* v. *Owen*, 54 Maine, 372. *State* v. *Goold*, 62 Maine, 509. Wills, deeds and other contracts usually fall under this classification. In such cases, the meaning of the instrument, the promise it makes, the duty or obligation it imposes, is a question of law for the court.

There is, however, a large class of writings where the meaning of particular words or phrases or characters or abbreviations must be shown by evidence outside the writing, and there may be extrinsic circumstances of one kind or another affecting its inter-

pretation, which may be shown by oral testimony. Here the same rule virtually applies as before. It is often but inaccurately said, in cases of the kind named, that the writing itself is to be passed upon and construed by the jury. Strictly, that is not so. They find what the oral testimony shows, and the court declares what the writing means in the light of the facts found by the jury. The facts may be found by a special verdict, and then the court interpret the writing in view of such finding, or the case may go to the jury with hypothetical instructions from the court, to render a verdict one way if certain facts are found, and another way if the facts are found differently. The court may first inform the jury as to the law, or the jury may first inform the court as to the facts, as may be most practicable. *Hutchison* v. *Bowker*, 5 Mee. & W. 535, 540. *Smith* v. *Faulkner*, 12 Gray, 251, 255. *Putnam* v. *Bond*, 100 Mass. 58. *Cunningham* v. *Washburn*, 119 Mass. 224. *Powers* v. *Cary*, 64 Maine, 9, 21.

Of course there are exceptions to the rule. It frequently happens that a writing is introduced merely as a fact or circumstance tending to prove some other fact. In such case it is generally but a link in a chain of evidence, the accompanying evidence being mostly or altogether oral. When that occurs the jury have to pass upon the whole transaction, of which the writing is but a part. The question then is, not so much what the document means, but what inference shall be drawn from its meaning, and what effect it shall have towards proving the point at issue. The writing and all the concomitant evidence go to the jury together. Here the duty of the court is comparatively unimportant. It may pronounce what meaning the writing is or is not capable of, and whether it is or not relevant to the issue ; still the value and effect of such evidence is a question of fact for the jury. The opinion in *Barreda* v. *Silsbee*, 21 How. 146, 147, speaks of such a writing as evidence " collaterally introduced." Other cases denominate it " indirect evidence." The case of *Miller* v. *Fichthorn*, 31 Pa. St. 256, defines it thus : " A writing, as evidence of a relation or right, must be direct or indirect evidence of it. Statutes, ordinances, wills, conveyances and other contracts which, *per se*, declare the right or relation, are direct evidence of it. Letters,

contracts, *inter alios,* or *de aliis rebus,* or any other writings demonstrative of facts relevant to the matter in controversy and tending to show its true character, are indirect evidence of it. The indirect written evidence of a relation is usually accompanied by oral testimony aiding or rebutting the inference desired to be drawn from it, and all such usually go to the jury together, as evidence on the disputed question ; and this was the meaning of Chief Justice Gibson (1 Pa. St. R. 386), when he said that ' an admixture of parol with written evidence draws the whole to the jury.' " The following cases are pertinent hereto. *Primm* v. *Hazen,* 27 Mo. 211. *Heft* v. *McGill,* 3 Pa. St. 257. *Reynolds* v. *Richards,* 14 Pa. St. 208. *Iasigi* v. *Brown,* 17 How. 183. *Bolckow* v. *Seymour,* 17 C. B. (N. S.) 107.

The rule may be subject to other qualification. It is sometimes difficult to determine, in the construction of papers, where the office of the court ends and that of the jury begins. But, in view of the rule or any possible qualification, we think the judge at *nisi prius* was right in undertaking, as matter of law, to give an interpretation of the letter relied on by the government as being a threatening communication. His course is sustained by direct authorities. *Regina* v. *Smith,* 2 Car. & Kir. 882. *Rex* v. *Boucher,* 4 Car. & P. 562. *Rex* v. *Pickford,* Id. 227.

The other question is whether the judge interpreted the letter correctly or not. He directed the jury to regard the letter as, *per se,* a threatening communication. He does not say what the crime or offense indicated in the letter was. He merely informs the jury that an accusation of some person for some crime or offense was intended. The letter, upon its face, can bear no other interpretation. What extrinsic and independent facts there were to modify the *prima facie* character of the communication, does not appear in the exceptions. All opportunities of explanation, it is presumed, were allowed to the state and also to the accused. Parol evidence was admissible for the purpose. Archbald Crim. Prac. and Plead. Title : Threatening Letters, p. 325. *Goodrich* v. *Davis,* 11 Met. 473. *Shattuck* v. *Allen,* 4 Gray, 540, 546. *White* v. *Sayward,* 33 Maine, 322. Threatening letters are likely to be written with as much disguise and artifice as

possible, and be sufficient to accomplish the purpose intended, requiring evidence *aliunde* to explain them.

It was not necessary to submit to the jury to ascertain what the term "inbited" was intended for; it not appearing that any extraneous facts were offered for that purpose. If its intended meaning could be best determined by external facts and circumstances, then the question was one of fact for the jury. If ascertainable from an inspection of the whole paper itself, in such case it was a question of law for the court. It is obvious enough from the context that an indictment was the thing threatened. The letter "d" in the word was deficiently made. *Fenderson* v. *Owen, supra. Coolbroth* v. *Purinton,* 29 Maine, 469. *Green* v. *Walker,* 37 Maine, 25. *Gallagher* v. *Black,* 44 Maine, 99.

*Exceptions overruled.*

APPLETON, C. J., WALTON, BARROWS, VIRGIN and LIBBEY, JJ., concurred.