[No. 14410. Department Two. May 10, 1918.]

SHIRLEY HOUGHTON, *Plaintiff and Appellant*, v.
WILLIAM J. HOY, *Respondent*, GUARDIAN
CASUALTY & GUARANTY COMPANY,
*Defendant and Appellant*.[1]

CONTRACTS—CONSTRUCTION—RAILROAD CONSTRUCTION—DELIVERY OF
MATERIALS. A contractor's agreement to deliver to the subcontractor
sand and gravel "as near as available railway trackage shall permit,
to bunker, hopper or working sites" does not require delivery to
the subcontractors to bunkers and working sites, where the principal
contract, which was made part of the agreement, plainly indicated
that the traffic should not be interfered with, and placed the entire
contract of tracks and traffic in the hands of the railway superin-
tendent, who refused permission to make deliveries west of a cer-
tain street; since the tracks were not then "available" for such
deliveries.

PRINCIPAL AND SURETY — CONTRACT — SUBCONTRACTOR'S BOND—NO-
TICE OF BREACH—SUFFICIENCY. A surety company is given sufficient
notice of the principal's breach of the contract, where, having no
agent in the city, a registered letter and telegram were sent to its
home office giving notice of the breach, and that it would be nec-
essary to take over the work and requesting what it proposed to
do about it.

SAME—RELEASE—EXTRAS. A compensated surety on construction
work is not released because the work included extras, where the
extras were provided for in the contract.

Appeal from a judgment of the superior court for
Spokane county, Henry L. Kennan, judge *pro tempore*,
entered April 5, 1917, upon findings in favor of the de-
fendant, in an action on contract, tried to the court.
Affirmed.

*Nuzum, Clark & Nuzum*, and *John Hubert Mee*, for
appellants.

*Cannon & Ferris*, for respondent.

[1]Reported in 172 Pac. 1148.

MOUNT, J.—This action was brought to recover the sum of $50,856.30, alleged to be due from the defendant on account of work done for the defendant under certain contracts. The defendant, after denying certain material allegations of the complaint, alleged a counterclaim and set-off, and demanded judgment against the plaintiff and the Guardian Casualty & Guaranty Company in the sum of $33,485.57. After issues were joined, the case was tried to the court without a jury, and findings were made and judgment entered in favor of the defendant for $22,736. The plaintiff and the Guardian Casualty & Guaranty Company have appealed from that judgment.

The facts may be briefly stated as follows: On October 8, 1914, the Northern Pacific Railway Company let a contract to W. J. Hoy Company for the construction of an elevated roadway through the city of Spokane. This elevated roadway was about three miles in length. It consisted of concrete retaining walls on each side of the right of way and overhead bridges across the public streets of the city over which the railway line extended. On November 14, 1914, the W. J. Hoy Company, original contractor for the Northern Pacific Railway Company, entered into a subcontract with R. H. Van Sant, Jr., Shirley Houghton, Raymond Ashton, and G. T. Bridgman, copartners doing business under the name of the Pacific Concrete Placing Company (which shall hereafter be referred to as the Placing company), by which contract the Placing company undertook to mix and place so much of the concrete as would be required for the retaining walls, cross-walls and bridges, at an agreed price of ninety cents per cubic yard. Thereafter, on February 11, 1915, the W. J. Hoy Company entered into another subcontract with the Placing company by which the latter company agreed to construct and maintain, with materials furnished by the Hoy

company, the wooden forms for retaining walls, cross-walls and abutments. These two contracts provided that the Placing company should furnish surety bonds for the faithful performance of these contracts, and bonds were furnished by the Guardian Casualty & Guaranty Company in the sum of $40,000 for the faithful performance of the concrete contract, and $7,000 for the faithful performance of the other contract. These bonds were both under date of April 9, 1915. Work was commenced on these contracts by the Placing company in March, 1915, and continued until in December of that year, when the work was stopped on account of the winter months. During the time the work was in progress, payments were made by the Hoy company to the Placing company in accordance with the terms of the contracts to the amount of ninety per cent of the estimates made by the supervising engineers.

After the work was closed down in December of 1915, the superintendent of the railway company notified the Hoy company, and in turn the Hoy company notified the Placing company, that no more deliveries of sand and gravel or concrete would be permitted upon railway tracks west of Division street. The Placing company insisted that it was entitled to deliveries of sand and gravel and cement at the work sites where work was being done, and for failure of the Hoy company to make such deliveries, declined to proceed with the contract for concrete work when the work was required to be started in March of 1916. The Hoy company thereupon notified the Guardian Casualty & Guaranty Company of this fact and that work would be started on the 28th day of March, 1916, and that, unless the Placing company or the Guardian Casualty & Guaranty Company proceeded with the contract for concrete work, the Hoy company would take charge of the work

and finish it at the cost of the Guardian Casualty & Guaranty Company and of the Placing company, which it did. The Placing company continued with the contract for retaining wall, cross-wall and abutment forms under the retaining wall contract, until the month of August, 1916. At that time the Hoy company refused to pay the monthly estimate of work done by the Placing company upon this contract, because the Placing company was then indebted to the Hoy company in excess of the amount of the monthly estimate. The Placing company thereupon refused to comply with that contract, and shortly afterwards the partners of the Placing company dissolved the copartnership and assigned to Shirley Houghton all their interest in the assets of the partnership and he assumed all the liabilities thereof. He thereafter brought this action, alleging the amounts due from the Hoy company to the Placing company to be $50,856.30. The Hoy company thereafter filed its answer, brought in the Guardian Casualty & Guaranty Company as defendant, and alleged that it had expended in excess of the amount due the Placing company the sum of $33,485.57, for which the Hoy company prayed judgment against the Placing company and the Guardian Casualty & Guaranty Company.

The trial of the case involved a multitude of accounts on the part of both the appellants and the respondent. The record is voluminous; but the primary question, and the one which controls the disposition of the case, depends upon a construction of the different contracts.

The contract between the Northern Pacific Railway Company and the Hoy company provided, among other things, as follows:

"The contractor agrees to furnish all labor, services and material for, and construct, complete and finish in the most thorough, workmanlike and substantial man-

ner in every respect to the satisfaction of the chief engineer of the company, within the time hereinafter specified, and according to the specifications hereto annexed and made part of this contract, all concrete construction, waterproofing, foundations, . . .

"Date of completion

"The work is to be commenced immediately and completed on or before the first day of June, A. D. 1916.

"The company will furnish free transportation over its own line subject to the review and instructions of the chief engineer as to the necessity for and proper use of same, for contractor's outfit to the work and return to point of origin or to a point having an equivalent tariff rate.

"Free transportation will be furnished for cement west of Logan, Montana.

"The contractor to pay full tariff rate on all other material and supplies entering into or used on the work, and contractor shall buy all such material if possible at points which will permit the company to receive the haul on such materials, routing same via the lines of the company and its connecting lines.

"Nothing herein contained shall be construed to relieve the contractor of payment of demurrage charges under car service association rules, for shipments of equipment and material by either the railway company or the contractor to be used on this contract."

In the specifications above referred to, it was provided as follows:

"Plans and Ordinance:

"All work must conform in every respect to the general and detail plans and specifications of the railway company, . . .

"Excavation:

"The price paid for excavation shall include backfilling and the actual haul of materials for any distance not exceeding 600 feet. The limit to which any materials may be required to be hauled shall be 3,500 feet.

"Engine, Work Train Service and Equipment:

"Necessary engine, work train service and equipment will be furnished the contractor at the railway company's regular rates for company work.

"Maintaining Traffic:

"The engineer will not permit the contractor to disturb or obstruct the track except as directed by the division superintendent of the railway company.

"The railway company will furnish such number of flagmen as the division superintendent may direct for the protection of traffic. The expense of flagmen services will be borne by the railway company.

"Rearrangement of Existing Tracks:

"The necessary rearrangement of the existing tracks of the railway company in order to give the contractor access to the site of the work will be done by the railway company's forces under the direction of the engineer.

"The general plan of track rearrangement as now proposed by the railway company may be seen at the office of the engineer, and the railway company will carry out this plan or a modification of same as rapidly as the business of the railway company will permit and the progress of the work requires, but it shall be distinctly understood that the railway company assumes no responsibilities for delays to the contractor account of track changes, the transferring of traffic from surface to elevated grades, obstruction of the work by the traffic of the railway company, etc.

"No changes whatever will be made in the existing tracks of the railway company except in cases where it is practically impossible to construct the work otherwise.

"Delivery of Material:

"Material received at the work in car load lots will be set out on the most convenient spur track available east of Division street.

"If the railway company furnishes cement, storage room will be provided at some point east of Division street.

"The contractor shall unload all cars within 48 hours of receipt of same, or pay regular car demurrage. . . ."

The contract between the Hoy company and the Placing company contained the following provisions:

"The Hoy company shall furnish all sand, gravel or crushed rock and cement required for all concrete work done in connection with said separation work delivered as follows: Sand and gravel or crushed rock f. o. b. cars in said city of Spokane as near as available railway trackage shall permit, to bunker, hopper or working sites of said Placing company, and furnish cement in cars at points where railway trackage is available and most suitable to the Placing company.

"Said Hoy company agrees to furnish not less than 500 cubic yards of gravel or rock, 250 cubic yards of sand and 500 barrels of cement per working day of twenty-four hours and shall, if larger quantities are desired by the Placing company, endeavor to furnish such additional quantities but not be bound to do so.

"To take and keep an accurate check on all cement cars, as to quantity, and report same to the local office of said Hoy company. To exercise all possible diligence in the care of cement sacks, and when emptied tie the same in bundles in multiples of one hundred, ready for reshipment to the cement company.

"To unload all sand, gravel, rock or cement delivered for any one day, in such way and at such time as to protect the Hoy company from demurrage charges and if demurrage charges are assessed they shall be paid by the Placing company."

Then, after referring to the contract between the railway company and the Hoy company, it was provided that:

"The provisions of said contract between the Hoy company and the railway company, in so far as they relate to the part of the grade separation work covered by this contract, are made a part of this contract."

It will be noted from these two contracts that

"Material received at the work in car load lots will be set out on the most convenient spur track available east of Division street.

"If the railway company furnishes cement, storage room will be provided at some point east of Division street.

"The contractor shall unload all cars within 48 hours of receipt of same, or pay regular car demurrage. . ." that

"The engineer will not permit the contractor to disturb or obstruct the track except as directed by the division superintendent of the railway company. . . ." and that

"The Hoy company shall furnish all sand, gravel or crushed rock and cement required for all concrete work done in connection with said separation work delivered as follows: Sand and gravel or crushed rock f. o. b. cars in said city of Spokane as near as available railway trackage shall permit, to bunker, hopper or working sites of said Placing company, . . ."

It is vigorously contended by the appellants that the Hoy company was bound to deliver sand, gravel, cement and other materials at the bunker, hopper or working sites of the Placing company. We think it is plain from the language of these two contracts—which must be construed as one (*State ex rel. Noble v. Bowlby,* 74 Wash. 54, 132 Pac. 723)—that the Hoy company did not agree to furnish the sand, gravel, crushed rock or cement at the bunker, hopper or working sites of the Placing company unless railway tracks were *available* for that purpose. The record shows without dispute that a large number of cars of sand, gravel and cement were furnished by the Hoy company at the bunker, hopper and working sites of the Placing company when railway tracks were available. A few cars, during the year 1915, were not so furnished; but the contract of Hoy with the railway company is clear to the effect that the tracks and the traffic thereon were entirely under the control of the division superintendent. The railway company, in the original contract, very plainly indicated that the traffic over its line should not be interfered with, and, for that reason, the division superintendent had control of the tracks and the traffic there-

on. If he refused permission for the use of the railway or spur tracks, such tracks were clearly not *available* for use to the contractor· or his subcontractors. · It is no doubt true that the Hoy company, if it desired to do so, might have agreed that sand, gravel and cement would be delivered by it at particular places, such as at the bunker, hopper or working sites of the Placing company; but the Hoy company did not make that agreement, because the contract states that · delivery of these materials shall be made

"as near as available railway trackage shall permit to bunker, hopper or working sites . . ."

This meant, of course, that, if *available trackage* would not permit, the Hoy company was not required to deliver the sand, gravel and cement at the working ·sites. When the division superintendent, in his letter in December, 1915, notified the contractor that he would not permit sand, gravel and cement to be delivered upon the tracks west of Division street, those tracks were then not available for that purpose, and consequently a delivery of the cars in the yards east of Division street was a delivery under the contract. This being true—and it seems no other reasonable construction of the contract can be indulged—it follows that the Placing company was not authorized to refuse to complete the concreting contract because the Hoy company did not deliver cars at the work sites. The appellants argue at length that there were delays in the delivery of materials in 1915. Such delays were caused partly, at least, by the fault of the Placing company. A careful reading of the abstract of the record fails to convince us that the trial court erred in finding that the Hoy company substantially performed its contract.

It is unnecessary to enter into a consideration of the different items in the accounting, upon which appel-

lants have written many pages of their brief, such as demurrage, insurance, pilot wages, water, failure to pay August estimate upon form contract, etc. Some of the items, considered in detail by the trial court, appear upon their face not to be justly chargeable against the appellants, but when explained, as they seem to be in the record, we are satisfied that the trial court arrived at a correct conclusion as to the allowance and rejection of items referred to in the briefs.

It is argued by the appellants that the Guardian Casualty & Guaranty Company is not liable upon its bond because the notice required in the bond was not given. The record shows that the Hoy company sent a notice by registered mail on March 23, 1916, to the Guardian Casualty & Guaranty Company at Salt Lake City, Utah, its home office. There was no agent in the city of Spokane upon whom notice could be served. On the next day, the Hoy company sent a telegram stating that the Placing company refused to proceed with its contract and that it would be necessary to commence work on the contract on March 27th, and asking the Guardian Casualty & Guaranty Company what it proposed to do. The Hoy company received no reply to either the notice or the telegram, and on the 28th day of March, 1916, took over the work and thereafter completed it. No effort was made to show that the Guardian Casualty & Guaranty Company would have taken over the work, or that it had made any effort to take over the work after notice was received by it of the refusal of the Placing company to proceed. It is plain, we think, that the surety was duly notified and had an opportunity to take over the work. We think it was the duty of the Guardian Casualty & Guaranty Company to proceed at once, upon the receipt of the notice, to take over the work or to notify the Hoy company of its intention to do so. It evidently determined

not to do so, and is liable, of course, for the damage which the Hoy company sustained by reason of the Placing company's not proceeding with the work.

Some contention is made by the appellants that, because extras were included in work which was done by the Placing company for the Hoy company, the surety was released. Extras were provided for in the contract, and this court has held that, in such cases, the doing of extra work by the contractor would not release the surety upon the bond. *Jenkins v. American Surety Co.*, 45 Wash. 573, 88 Pac. 1112.

A number of other points are discussed in the briefs, but our conclusion to the effect that the Placing company was not justified in refusing to carry out its work under the concreting contract, and was therefore in default of that contract, necessarily leads to the conclusion that the respondent is entitled to the damages resulting from a breach of that contract by the Placing company.

As we have intimated above, we are satisfied that the trial court correctly found the facts upon the different items in the accounting between the parties.

The judgment must therefore be affirmed.

ELLIS, C. J., PARKER, and HOLCOMB, JJ., concur.