OVERTON, J.
 

 John O. Chisolm & Co. entered into a contract with the city of New Orleans to build the Delgado Central Trades School for $638,500, in conformity with the plans and specifications attached to the contract, and forming part thereof. William S. Delaney, who was a plasterer by trade, entered into a contract with John O. Chisolm & Oo. to do all the plastering and cementing required in connection with the contract entered into toy Chisolm & Co. with the city of New' Orleans, in strict accordance with the plans and specifications attached to that contract. These plans and specifications are declared to -be familar to Delaney and are made a part of his contract. By a supplemental contract the use of the elevator, of water, and of scaffolding was provided for.
 

 The present suit grows out of these contracts. It is Delaney’s contention, or rather that of his representatives,' for Delaney died while this appeal was 'pending, that Chisolm & Co., in settling with him, failed to settle-for certain extra work done, failed to indemnify him for certain interest, which he was required to pay, because of Chisolm & Oo.’s failure to pay him with reasonable promptness, and failed to pay him certain insurance that Chisolm & Co. collected, which was due him. These items aggregate $2,368.28. Delaney sues for this amount, and also for 10-per cent, attorney’s fees, based thereon, and for recognition of a privilege upon the building erected, and the lot upon which it was erected. The members of the firm of Chisolm
 
 &
 
 Co., or their representatives (for the firm was dissolved after this dispute arose by the death of one of its members), admit that certain of the work done by Delaney was extra
 
 *409
 
 work, but deny that other parts of it were, and contend that, if these parts should be considered extra, still there was no compliance with the contract as to the doing of extra work, in that the extra work was not authorized in writing. These defendants admit that Chisolm & Co. collected certain insurance, a part of which was due Delaney, but contend that the part due him was less than that claimed by him. They deny that Chisholm & Co. is indebted to Delaney for the interest charged by him against the firm. They aver that Delaney refused, after having been put in default, to plaster an elevator lobby and certain stairway soffits in the building, which his contract required him to plaster, and that his refusal to do this plastering made it necessary for Chisolm & Co. to resublet that part of the work, which they did, at a cost of $1,735, with which amount Delaney, it is urged, is chargeable. They also urge that there is due Chisolm & Co. by Delaney a balance of $4.22 for the úse of an engine and elevator; $88.38 for the wages of an engineer and fireman; $47.87 for water service; $41.66 for glass broken; and $100 for the elimination of 12 plaster trims in the auditorium. They also aver that the foregoing items, which are chargeable against Delaney offset anything due by Chisolm & Co. to him, and hence that his demand should be rejected.
 

 The city of New Orleans and the United States Fidelity & Guaranty Company were also made defendants herein, but the view we have taken of the case makes it unnecessary for us to outline the issues as presented by them.
 

 The trial court, after hearing the case, rendered judgment rejecting plaintiff’s demand.
 

 The case presents only questions of fact. The chief item in contest is the one for $1,-735 for plastering the rear elevator lobby and the stairway soffits. It is not questioned that Delaney refused to plaster them, nor is it questioned that, after Delaney was put in default for failure to do this part of the work, the plastering of the- lobby and soffits was re-let to the lowest bidder, and done for $1,735. The question is whether the plastering of these parts of the building constituted a part of the contract entered into by Delaney. The plans and specifications were made part of the contract entered into by Chisolm & Co. with the city of New Orleans and of the subcontract entered into by that firm with Delaney. The plans consist of 25 sheets, and are marked No. 1 of 25, No. 2 of 25, and this method of marking is continued until No. 25 of 25 is reached. Sheet No. 17 of 25 plays an important part in this litigation, and is a detail sheet. It is the only sheet that refers to the plastering of the elevator lobby and the stairway soffits. It was Delaney’s contention and it is the contention of his representatives that sheet No. 17 is not a plan, but is only the detail of a plan, and if the plastering in question is not shown by the specifications or the plans proper, then that it is not required by the contract, the contract merely referring to the plans and specifications to show what was to be done. The specifications contain no clause requiring that the parts of the building in controversy be plastered,- but they contain a provision which was relied upon by Delaney, and which is urged by his representatives, as showing that the plastering of these parts was excluded from the contract. That provision reads as follows:
 

 “For interior, it is intended that the administration only as a whole shall have plaster finish surfaces; throughout other units, toilets, showers and first aid, are only to have interiors plastered.”
 

 The trial judge was of the opinion that this provision does not exclude the plastering of the elevator lobby and the soffits from the contract, but, properly interpreted, means:
 

 “That as a whole the administration building should be plastered, and-that the only parts of
 
 *411
 
 the other units to he plastered as a whole were the toilets, showers, and first aid units.”
 

 The trial judge, however, was of the opinion that, even if his construction of this provision was incorrect, still, in view of the fact that sheet No. 17, which showed that the plastering under consideration was to be done, was as much a part of the plans as any other of the 25 sheets, and that in view of a provision in the specifications, reading that “all work designated on the plans, or described in these specifications, must be executed whether designated on or described in one only or both,” made it the duty of Delaney to examine all of the plans and specifications before bidding, and, after the contract was awarded to him, to do the work, whether the work was called for by the specifications or the plans or by both. The trial judge then continues his opinion, on the phase of the case under consideration, as follows:
 

 “Again counsel for plaintiff contends that because, in a detail on the plans, covering the stage area, plaster was required and the architect in drawing up the specifications, at page 67, under section 153, used the following language: ‘Omit plaster ceiling over stage area as noted on plan’ — and did not make any mention of omitting plaster as called for on sheet 17 with reference to the work in dispute, that the architect conclusively showed that he, the architect, did not intend that the plastering on the detail on page 17 should be done. The court believes that, instead of being an argument in favor of plaintiff, reference to the action of the architect on the plaster ceiling over the stage area, as described above, is a very strong argument against the plaintiff,, because if the architect had not specifically, in the specifications, excluded the ceiling over the stage area from the necessity of being plastered, it would have been the plaintiff’s duty to have plastered the ceiling in accordance with the detail of the plans.
 

 “There is no necessity to discuss the decisions referred to by counsel-relative to custom, etc., as a resort to custom cannot be had when the language of the contract is dear and unambiguous. To the mind of the court, the language of the specifications is clear, when it specifically says, as quoted above, that whether the work was designated in the specifications or on the plans it should be done.
 

 “If the plaintiff had properly investigated the matter and properly examined all the plans and specifications, he would have seen sheet No. 17, and he, if there was any doubt in his mind as to his obligations, could have properly informed himself prior to undertaking the contract. The undisputed testimony of one of the defendants, Mr. Chisolm, shows that he repeatedly called the attention of the plaintiff to the fact that his bid,was low and that the bid of the plaintiff was raised some several thousand dollars from the original bid which he had offered.”
 

 In our opinion, the view of the trial judge on this phase of the case is- correct. Sheet No. 17 was a part of the plans. This sheet showed that the plastering of the parts in controversy should be done. The specifications disclosed that work shown in either the plans or specifications should be performed. Our conclusion, therefore, is that this work was part of Delaney’s contract, and as he did not perform it, the cost of executing it, which was $1,735, should be charged against him, and deducted from the contract price he was to receive.
 

 We are also of the opinion that $100 should be deducted from the contract price for the omission of 12 plaster trims. These trims were eliminated by the architect, and wooden trims substituted by him. This change decreased the amount of work that Delaney had to do, and lessened the cost of doing it by $100. The contract authorized the proper deduction to be made.
 

 In our view, Delaney’s demand for $102 for extra work for plastering certain pilasters should be disallowed. It seems that the plans and specifications did not provide for the plastering of 2 or more pilasters, when it seemed obvious from the surroundings that they should be plastered. Chisolm & Co. did not receive any extra compensation from the owner for this plastering. However, treating this work, as an extra, still compensation for it cannot be allowed, for the specifications
 
 *413
 
 provide that no allowance will be made for extra work, unless the same has been ordered in writing by the city engineer, and a bill in duplicate therefor is submitted to and approved by him. This provision in the specifications was not complied with. For the same reason the item of $10, claimed by Delaney, as an extra, for straightening a wall out of plumb, cannot be allowed.
 

 We are also of the opinion that Delaney’s demand for $67 interest, which Delaney claimed he had to pay 'because Chisolm & Co. failed towards the latter part of the work to pay him promptly, should not be allowed. The evidence does not establish this claim with legal certainty. Moreover, it is not unlikely that Chisolm & Co.’s failure to pay more'promptly towards the last was due, at least in part, to Delaney’s failure to perform fully his part of the contract.
 

 As relates to that part of Delaney’s demand for compensation for extra work, and for other items, not already considered, the demand for $1,680 for furring ceilings is admitted to be correct in the answer filed in behalf of Chisolm & Co. The demand for $187.-50 for additional labor is also admitted to be correct by that firm. The demand for $376.-20 for insurance, collected by Chisolm & Co. on some of Delaney’s property, had by him' in connection with his work, is denied by that firm, with the exception of $280.67. The evidence shows that $280.67 is all that Chisolm & Co. collected for account of Delaney from the insurance company, and is all, therefore, that Delaney, or his heirs, is entitled to credit for on this item. These findings show that Delaney, or his heirs, is entitled to $2,-148.17 on the balance sued for by him, subject to the deductions to be hereafter made.
 

 Taking up now for consideration the deductions and offsets urged by Chisolm & Co., not already considered, we find that the evidence establishes that the item of $4.22, for balance due for use of engine and elevator, the item of $88.38, for wages of engineer and fireman, the item of $47.87, for water service, and the item of $41.66, for broken glass, should be allowed. These items, we think, are clearly established. To them should be added the item of $1,735, the cost of plastering the lobby and soffits, already considered, and $100 for the elimination of 12 plaster trims-. These items total $1,997.13. Deducting this total from the $2,148.17, found to be due Delaney, or his heirs, leaves a balance in favor of Delaney, or his heirs, of $151.04, for which Chisolm & Co. were liable to plaintiff, and which the representatives of the members of that firm, both of whom are now dead, should pay.
 

 The city of New Orleans and the surety on the contractor’s bond were made parties to the suit. However, neither of these defendants is liable for this balance. Neither is liable for it, because it may be said to con.sist of the balance due on the insurance collected by Chisolm & Co., for, if this insurance were omitted from the items allowed Delaney, the balance would be in favor of Chisolm & Co., instead of Delaney or his heirs. The collection of the insurance was not so related to, or connected with, the work contracted to be done as to make the city of New Orleans, the owner of the building, liable for the amount collected. The city had nothing to do with the collection of the money. The collection of this money and the accounting for it are not covered by the surety’s bond.
 

 For the reasons assigned, the judgment ap^ pealed from is annulled and set aside, and it is now ordered that Mrs. Josephine Cabbennes, widow of William S. Delaney, deceased, surviving spouse in community, who has been put in possession of one half of the property of-said community as owner, and of the other half as usufructuary, and John H.
 
 *415
 
 Delaney, Annie O. Delaney, who in religion is Sister Marie, Joseph S. Delaney, Bernadine Delaney, who in religion is Sister Catherine, Josephine Delaney, and James M. Delaney, made parties plaintiff herein in place of William S. Delaney, deceased, recover judgment against John W. Cousins, testamentary executor of John O. Chisolm, deceased, who has been made a party defendant herein, and Irene May Moore, wife of Sims C. Nettles, and Samuel Rexford Moore, sole heirs of Samuel Moore, deceased, made defendants herein, in place of said Samuel Moore, deceased, who together with said John O. Chisolm, also deceased, constituted the firm of John Ó. Chisolm
 
 &
 
 Co., in the sum of $151.-04, with legal interest thereon from judicial demand, the one-half of said indebtedness, for which said Samuel Moore was liable, to be paid by his said heirs jointly. It is further ordered, as decreed by the-trial court, that the demands against the city of New Orleans and the United States Eidelity & Guaranty Company be rejected, the costs of this suit to be paid by those of the defendants who have been cast herein.