This suit involves a claim by plaintiff, who is a building contractor, against the defendants, Mr. and Mrs. M.B. Thibodeaux, on a contract whereby plaintiff undertook to perform certain construction to and repairs on the property of the defendants, located at 4426 Flamingo Street in the Parish of Jefferson. The amount of the contract is $2,590. Plaintiff was paid the sum of $1,500, and the suit is for the alleged balance due of $1,090.
The petition alleges that plaintiff complied with the terms of his contract and completed the work, and that notwithstanding amicable demand the balance due him under the contract has not been paid.
Mrs. Thibodeaux interposed an exception of no right or cause of action which was maintained by the lower court, and she was dismissed from the suit.
Thibodeaux, who will be referred to hereafter as "defendant," made answer in which he denied that the job was fully completed, and alleged that the work which had been performed was not done in a workmanlike manner in accordance with the contractual stipulations.
Defendant assumed the position of plaintiff in reconvention and alleged in that capacity that the cost of completing the contract by a third party would amount to the sum of $2,000, and that deducting therefrom the balance claimed by plaintiff to be due, he, the plaintiff in reconvention, is entitled to a judgment for the difference, or for $910.
After a trial on the merits in the Twenty-Fourth Judicial District Court for the Parish of Jefferson, plaintiff's demands were dismissed, and there was judgment in reconvention in favor of Thibodeaux for the sum of $910. Plaintiff has appealed.
[1] It is well settled that a contractor is entitled to recover for the value of work substantially done by him, even though such work be unfinished or defective, the owner being relegated to a reduction of the price to an amount necessary to correct or complete the work. See Brandin Slate Co. v. Bannister, La. App., 30 So.2d 877, and authorities therein cited.
The contract forming the basis of this suit contains seventeen numbered items, plus the installation of an electric light *Page 662 
and switch on the front porch, and also the installation of a feeder line from the butane gas tank to the house, which plaintiff agreed to perform to defendant's building that had been removed from another lot to its present location. Plaintiff obligated himself to furnish all labor and materials in connection with the work.
[2] At the outset, suffice it to say that the plaintiff, notwithstanding the allegation that he had performed his contract, admitted that the job is unfinished and there are several items which he has not performed, and others which, while performed, were not in accordance with the contract. Specifically, he admitted that the contract called for a Johns-Manville hexagonal rubberoid externit asbestos roof, but that he substituted another roof of a different type, which was installed by the Brandin Slate Company. There is a dispute between the parties as to whether defendant agreed to this substitution, but that is of little importance, as there is no question that the defendant, who accepted the substituted roof, is entitled to a credit for the difference in the price of the roof which should have been applied under the contract, and the cost of the substituted roof. Delaney v. John O. Chisolm Co.,166 La. 406, 117 So. 443.
The only testimony in the record which tends to show such difference in the cost between the two roofs is that of Albert Posecai, a carpenter, who testified as a witness for defendant, and his estimation is that the difference in price would be between $40 and $50. On this particular item Posecai's testimony is so vague that we cannot determine therefrom what the exact difference is, and his evidence is not helpful in a determination of the matter.
Polizzi freely admitted on the witness stand that he had quit the job before completion of the contract. He states that Mrs. Thibodeaux "ran" him off the job, hence the noncompletion. On the other hand, Mrs. Thibodeaux testified that Polizzi quit the job because she would not advance him any more money, as he was already overdrawn on the contract. Polizzi first stated that the job could be completed at a cost of $70, but at another point his testimony is that it would cost between $70 and $80.
Several of the contractual items are drawn into dispute. Item 5 covers the construction of a front porch. Polizzi admitted that the porch was not ceiled. Jeffcoat, a carpenter, who appeared as a witness for defendant, estimated it would cost $175 to ceil the porch, while Posecai's estimate was "around $250.00 or $300.00." This latter witness estimated that the porch was only about fifty per cent completed. Posecai, later in his testimony, said that $200.00 would suffice to complete the porch, and in another statement said he did not remember what the cost would be. Mr. and Mrs. Thibodeaux both testified that the screen work on the porch was not done in accordance with the contract, as there were no columns erected and the screens were nailed onto studs without cross pieces. Thibodeaux also claims that the porch has buckled and that a person traversing it could get his shoes caught in the planks.
Item 8 embraces the construction and installation of a cess pool, and plumbing in the house. Jeffcoat's statement is that the installation of a lavatory bowl was incomplete, and M.B. Thibodeaux, Jr., defendant's son, testified that no trap for the bathroom had been installed and that the toilet was stopped up. This latter witness stated that he completed this work himself at a cost of $2.25 for materials.
Item 11 ("Insulate with brick masonite missing pieces over exposed wood work only") and item 16 ("Repair all defected spots on outside of building and porch") may be considered together. Polizzi admits that about three squares of wallhide siding were not installed over exposed woodwork, and that he has not completed this detail. His estimation is that three squares of siding are necessary on the outside of the house. Vincent, who appeared for plaintiff, testified that the job is completed with the exception of three squares of wallhide shingles around the bottom of the house, and that the porch has to be ceiled. Jeffcoat testified that the missing pieces over the exposed woodwork were not installed, and his estimate was that it would cost about $65 to complete it. Mrs. Thibodeaux further complains *Page 663 
that no fascia boards were installed. Posecai observed that the siding on the outside was not completed, and he estimated that it would take five squares of siding to do so, but he could not remember how much the cost would be. Thibodeaux, Jr., stated that the brick siding on the outside is incomplete, and that under the contract Polizzi was supposed to place a layer of felt first to protect the wood, and that the siding was to be nailed over the felt.
All parties agree that item 12 ("Renail masonite around building") was not done, and the only estimate as to the cost of completion was given by Jeffcoat, who said it would be around $75.
Under item 13 the contractor was to install a door on the front porch, and the uncontradicted evidence is that the door was installed wrong-side-out, and is now hanging on one hinge as the screws in the other hinge became loose. However, there is no indication whatever as to the cost of correcting the defective door.
Item 14 contemplated the installation of a double window, and Polizzi admits that the sash was never supplied or installed. The only estimate as to cost is by Jeffcoat, whose opinion is that it would take $45 or $50 to complete it.
Polizzi gave no testimony in reference to item 15, covering the repairing of insulation in the downstairs bathroom and hall, but the defendant and several other witnesses stated that the work was incomplete and Jeffcoat's estimate was that the cost would be around $45 or $50 to finish repairs to the insulation.
The testimony in reference to item 17 is vague to say the least, and it is extremely confusing. The contract calls for painting the interior with water colors, but the contractor testified that in accord with an agreement with Mrs. Thibodeaux wallpaper was substituted. He claims that he painted two rooms, but that the Thibodeauxs were not satisfied and suggested wallpaper, and that in order to satisfy them he undertook to make the change and put paper on the walls. According to his version there is little difference in cost between the painting and papering; however the difference is not shown. Polizzi admils that he did not install the electric light with switch on the porch; he likewise made the admission that he had never installed the feeder from the butane tank to the house. Two witnesses supported Polizzi's statement that the Thibodeauxs authorized the substitution of wallpaper in lieu of the painting, but on the other hand Mrs. Thibodeaux testified that she agreed to the substitution only if Polizzi would let her choose the paper to be used, but that he gave her no choice in the matter and installed some "dirty cheap-looking" paper, over her protest. There is some testimony that the wallpapering job is a "horrible" one; that there are holes near the windows and the paper is torn and uneven. Jeffcoat estimated that it would cost $200 to paint the interior of the house with water colors. There is no testimony whatever regarding the cost of installing the electric light and switch on the porch.
The witness Posecai was produced by defendant in an effort to prove the nature of the defects existing in the job and the incompleteness of it, and to inform the court the cost of doing the corrective work and completions. As noted above, Posecai gave no testimony whatever regarding the cost of several disputed items, and when he did make an estimate his figures were vague and of little assistance in a determination of the dispute. The record shows that he visited the premises in question and made pencil notations of the necessary details, which he handed to Thibodeaux who later had them typewritten. The typewritten memoranda is contained in the record, but we notice that it was never identified by Posecai, nor was it ever offered formally in evidence, and we can give to it no consideration.
There can be no doubt that Polizzi has not performed the work he contracted to do, as he admitted he did not finish the job, and there is likewise little doubt that some of the work, even though performed, was defective and not in compliance with the terms of the written contract. There was offered in evidence by defendant certain photographs, and a viewing of these by us instantly produced the impression in our minds that some of the work is extremely defective; for instance, large gaps *Page 664 
appear in the siding on the exterior of the house; the siding appears to be uneven in places and bare woodwork is exposed; one of the doors was not fitted correctly, as large cracks appear between the frame and the door itself; the photograph of the front porch discloses that there is no ceiling whatever over it; the window casing in the front room is not installed and there appears to be a bad leak beneath the window.
[3, 4] From the confused, contradictory and incomplete state of the record, we are utterly unable to adjudge this case. Besides one set of witnesses disagreeing with the other set, the witnesses for the various parties disagree among themselves on important details. Where, in the opinion of an appellate court, the interests of justice would be best subserved by setting aside the judgment of the trial court and remanding the case to be tried de novo, that course may be pursued, and we believe that the ends of justice dictate that this case should be so treated, as further evidence is absolutely necessary for a proper adjudication of the dispute.
[5] However, there is one item that we can pass upon. Under the contract Polizzi was to furnish all necessary materials and labor. The substituted roof above mentioned was installed by Brandin Slate Company, and although Polizzi overdrew on the progressive payments provided for in the contract, he has never paid Brandin Slate Company, and the proprietors of that company have leveled a lien against the property of defendant, and have filed suit for a maintenance and recognition of the lien. The suit is for the principal sum of $410, plus $5 for the cost of filing the lien, together with interest at the rate of six per cent per annum from August 13, 1946, until paid, and also for fifteen per cent attorney's fees on the amount of the claim and interest. The contractor is clearly liable unto the defendants for the amount of the slate company's lien, and whatever amount is determined to be due the contractor should be offset pro tanto by the amount which defendant will have to pay the slate company to satisfy the lien and the suit seeking recognition of it.
The lower court found as a fact that the cost to defendant for remedying the defective work and for completing the unfinished portion of it would aggregate $2,000, but we are at a loss to know how that figure was computed, as there is absolutely no evidence in the record supporting it. Defendant's counsel frankly concedes that the trial judge was in error respecting the $2,000.
The lower court is directed to receive such competent evidence as it deems necessary to show the nature of the incomplete work and the cost of completion, and the amount of the defective work and the cost of correction, and defendant is to be given credit against the claim of the plaintiff for the amount found necessary to complete and correct the work, and also for the difference in the cost of items contracted for which were eliminated and substituted by other items, and if the aggregate of such amounts, plus that which is due Brandin Slate Company on its lien, is greater than the claim of plaintiff, then judgment for the difference is to be awarded defendant, Morris B. Thibodeaux, as, plaintiff in reconvention.
For the reasons assigned the judgment appealed from is reversed, and it is now ordered, adjudged and decreed that this case be remanded to the court below for such proceedings as are necessary, not inconsistent with the views hereinabove expressed; defendant is to pay the costs of this appeal, and all other costs are to await the final determination of the case.
Reversed and remanded. *Page 665