[No. 32716. Department Two. May 7, 1954.]

GORDON M. BROWN, *Appellant,* v. M. I. POSTON *et al., Respondents.*[1]

[1]Reported in 269 P. (2d) 967.

718

[redacted]

*Lycette, Diamond & Sylvester* (*Lyle L. Iversen*, of counsel), for appellant.

*Ferguson & Burdell* (*Calvin C. Culp*, of counsel), for respondents.

HILL, J.—This action was brought by the plastering subcontractor against the general contractor to recover the difference in cost between the metal lath the former was required to use and the gypsum or rock lath which he asserted his subcontract would have permitted him to use on the ceilings of certain classrooms in a school building being erected by the general contractor. After trial, the action was dismissed, and this appeal followed.

The trial court found:

"That looking at both the plans and specifications there is a requirement for the use of channel suspended metal lath in the construction of the ceilings in the classroom area of Unit B, second floor, and that construction of said ceilings in said manner is not an addition to the work required under the contract."

Under the view we take of this case, that finding is determinative of the issues presented, and, unless appellant can successfully attack it, it becomes unnecessary to discuss any other assignments of error.

Appellant attacks that finding on the basis that it was arrived at by undertaking to construe an unambiguous contract. Appellant relies on certain language in the specifications relating to the lathing and plastering requirements which is not ambiguous and which, when applied to the dis-

puted area, would call for rock lath. However, the specifications are not the only source for determining these requirements, since they are also included in the construction details of the plans.

 Appellant contracted to perform the plastering work "as per plans and specification," thereby incorporating both documents into the subcontract. *George C. Lemcke Co. v. Nordby,* 117 Wash. 221, 200 Pac. 1103 (1921); *Vance v. Ingram,* 16 Wn. (2d) 399, 133 P. (2d) 938 (1943); see, also, *Houghton v. Hoy,* 102 Wash. 358, 172 Pac. 1148 (1918), and annotation in 9 L. R. A. (N.S.) 1007 (1907).

In *Bellingham Securities Syndicate v. Bellingham Coal Mines,* 13 Wn. (2d) 370, 384, 125 P. (2d) 668 (1942), one of the cases relied upon by appellant, we stated:

"It is only in those cases where the writing fails to provide the answer to a question of meaning that the courts may look elsewhere for aid in construction. Where the terms are plain and unambiguous, the meaning of the contract is to be deduced from its language. 17 C. J. S. 695. That the position of appellant is correct and it is unnecessary to resort to aids to construction, *is clear from an examination of the whole contract, which must be construed as a whole, and the intention of the parties gathered from the entire instrument.*" (Italics ours.)

 Here the trial court was required to interpret the subcontract in the light of both the specifications and the plans, which were a part thereof. In Restatement, Contracts, § 235, under comment on clause (c), p. 322, it is said:

"*d.* Where a writing contains a sentence or paragraph of doubtful meaning when taken by itself, it may be made clear by other parts of the writing, and *even words which have in themselves a clear meaning may be controlled and given a different meaning because of other parts of the writing.*" (Italics ours.)

The plans are at variance with the provision of the specifications upon which appellant relies, and the subcontract taken as a whole is ambiguous. Appellant's brother, who made the estimates on this job, admitted that such variations existed when he stated that he installed metal lath in other parts of the building when called for by the plans even

though not called for by the specifications. It was also stated in a letter written by appellant that "There seems to be conflicting meanings as to the interpretation of the plans and specifications," and that his estimate was based upon "information gathered from details on sheets # 19 and 20." (The sheets referred to are part of the plans.) Several experts testified that appellant's interpretation of the plans was erroneous and that, properly interpreted, the plans called for metal lath in the disputed area.

The subject matter of the contract was technical in nature, and many of the terms and drawings included in the plans and specifications could not be interpreted intelligently without reference to testimony to explain them. Not only did the meaning of these terms and drawings, when disputed, become an issue of fact, but when their meaning thus explained disclosed the ambiguity or inconsistency, the resolution of this ambiguity was also a technical question, to be decided in the light of conflicting testimony as to the relative significance which the various provisions, terms, and drawings should have, within the field or subject matter to which they related, namely, building construction. In other words, the trial court was confronted with a question of fact not only as to what the terms meant, but as to what bearing they should have or weight they should be given in resolving the ambiguity. The trial court made the quoted finding after hearing conflicting expert testimony as to the proper interpretation of the plans and specifications, and a finding so made will not be disturbed. *Kieburtz v. Seattle,* 84 Wash. 196, 205, 146 Pac. 400 (1915); *Dioguardi v. Haddow,* 167 Wash. 62, 8 P. (2d) 978 (1932); *Keeter v. John Griffith, Inc.,* 40 Wn. (2d) 128, 241 P. (2d) 213 (1952); *Delaney v. John O. Chisolm & Co.,* 166 La. 406, 117 So. 443 (1928); *Massiah v. Hood,* 138 Pa. Super. 90, 10 A. (2d) 79 (1939); *Massachusetts Bonding & Ins. Co. v. Ray Dilschneider, Inc.,* 203 F. (2d) 556 (1953).

In the *Kieburtz* case, *supra,* in answering the contention that certain excavation work was not included in the contract, we said:

"On the other hand, if the contract be of doubtful interpretation, the question was properly submitted to the jury, and their verdict is conclusive against a recovery if there was a substantial conflict in the evidence, and the question was submitted under proper instructions. As to the evidence, we think there was a substantial conflict. *True, the conflict was between the experts.* But the question was one on which it was proper to take the opinion of experts; and, clearly, where such evidence is properly submitted to a jury, it is as much their province to determine between the conflicting opinions as it is their province to determine between other forms of disputed evidence, and their verdict upon the one is as conclusive as it is upon the other." (Italics ours.)

■ The interpretation of this particular subcontract on the point in controversy seems so clearly a matter to be determined by the trier of the facts on the basis of the expert testimony, and his findings so decisive as to the only matter as to which the subcontract was susceptible of construction, that we have not elaborated upon the circumstances under which the interpretation of a contract becomes dependent upon the finding or findings of the trier of the facts. Strictly speaking, in such a case the writing is not, as is often said, construed by the trier of the facts. The trier of the facts finds what the oral testimony shows, and the court declares what the writing means in the light of the facts so found. *State v. Patterson,* 68 Me. 473 (1878). Our most extended statement on that subject will be found in *Durand v. Heney,* 33 Wash. 38, 73 Pac. 775 (1903). This case has frequently been cited and was recently quoted at length in *Keeter v. John Griffith, Inc., supra.* For an annotation on the subject, see 65 A. L. R. 648 (1930).

While we are in accord with certain of appellant's contentions, particularly that he was not bound by the interpretation placed upon the plans and specifications by the architect, the quoted finding of the trial court is supported by substantial and credible evidence and is determinative of the case. The judgment is affirmed.

GRADY, C. J., SCHWELLENBACH, DONWORTH, and WEAVER, JJ., concur.